FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2001 JAN -2 AM 10: 17

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| TERREBONNE PARISH SCHOOL BOARD | ) | CASE NO.: 00-0319 |
| VERSUS | ) | SECTION: "B" |
| COLUMBIA GULF TRANSMISSION COMPANY, and KOCH GATEWAY PIPELINE COMPANY | ) ) ) ) | MAGISTRATE: 5 |

**TERREBONNE PARISH SCHOOL BOARD'S
MEMORANDUM IN OPPOSITION TO COLUMBIA GULF'S
MOTION TO COMPEL ANSWERS TO SECOND SET OF DISCOVERY**

**MAY IT PLEASE THE COURT:**

Defendant, Columbia Gulf Transmission Company ("Columbia Gulf") has filed to compel the Terrebonne Parish School Board ("TPSB") to provide more complete answers to their second set of interrogatories. For the reasons that follow, said motion must be denied as TPSB has provided complete, accurate and truthful responses to said interrogatories.

The substance of the disputed interrogatories centers on TPSB's responses as to why TPSB was not aware that Columbia Gulf had (1) caused damage to TPSB's flotant marsh through negligence prior to October 1998, and (2) breached its right of way agreement prior to October 1989. In response to interrogatory number three, which response is equally applicable to the first two interrogatories and in light of TPSB's responses to Columbia Gulf's Requests for Admission, TPSB provided a straightforward, concise and factually accurate response:

> TPSB objects to said request to the extent that it seeks information protected by the attorney-client, work product and/or consulting expert privileges. Subject to said objection, please refer to the expert reports previously produced by TPSB in connection

1

with this matter. Additionally, meetings were held between TPSB's attorneys and experts during the months immediately prior to the filing of these suits.

Why did TPSB provide the answer that it did? In so responding, TPSB provided a fair, concise and accurate response to said interrogatories. The expert reports prepared on behalf of TPSB clearly demonstrate the difficulties encountered in determining the processes involved in marsh erosion, much less whether any particular oilfield canal played any role in causing said erosion. In further support of the accuracy of TPSB's response, TPSB refers this court to a copy of the Affidavit of Dr. Chabreck that was filed in support of its Motion to Exclude Evidence of Studies and Plans on Other Section 16 Lands. (See exhibit "A", copy of Affidavit of Robert Chabreck filed on December 28, 2000).[1] Said affidavit clearly demonstrates the fact that although one may have a general knowledge with regard to erosion of marsh lands because of oil and gas location and pipeline canals, one cannot make a causative link without conducting extensive expert evaluation into the causes of said erosion. Moreover, TPSB's response to interrogatory number 3 provided Columbia Gulf with an adequate and fair response to when TPSB acquired the relevant knowledge.

Despite Columbia Gulf's protestations to the contrary, TPSB is not required to speculate as to why any investigation may not have occurred prior to that associated with the current suit. Moreover, Columbia Gulf's interrogatories unfairly ask TPSB to state why it did not know a particular fact at a particular time. The plain and simple truth is that TPSB did not obtain the knowledge necessary to conclude that Columbia Gulf may be liable in negligence and breach of

---

[1]  Unfortunately, the only signed copy of said affidavit was provided to the Court and undersigned counsel can only produce an unsigned, but certified copy of the affidavit, that he notarized on said date immediately prior to filing.

2

contract for damage to the flotant marsh in Section 16, Township 18 South, Range 13 East until such time as it's attorneys were orally provided with a preliminary opinion as to the causation of said damages immediately prior to the filing of said suit. TPSB cannot provide a more concise and factually accurate statement in response to Columbia Gulf's interrogatories, nor will TPSB engage in speculation to entertain Columbia Gulf's unwarranted attempts to coerce their desired responses.

WHEREFORE, the Terrebonne Parish School Board respectfully prays that this court deny Columbia Gulf's Motion to Compel.

Respectfully submitted;

_____
MICHAEL X. ST. MARTIN   #12365
JOSEPH G. JEVIC III        #23145
ST. MARTIN & WILLIAMS, APLC
Post Office Box 2017
Houma, LA 70361
(504) 876-3891        Telephone
(504) 851-2219        Facsimile

**A. J. GRAY, III            #6253**
**WADE T. VISCONTE     #24734**
**THE GRAY LAW FIRM (APLC)**
Post Office Box 1467
Lake Charles, LA 70602-1467
(337) 494-0694        Telephone
(337) 494-0697        Facsimile
**Attorneys for Terrebonne Parish School Board**

## CERTIFICATE OF SERVICE

I CERTIFY that a copy of the preceding pleading has been served on all counsel of record via FedEx ~~by placing same in the United States mail delivery, postage prepaid and properly addressed~~, on this 29th day of December, 2000.

JOSEPH JEVIC, III

| | | |
|---|---|---|
| TERREBONNE PARISH SCHOOL BOARD | § | CIVIL ACTION NO. 00-0319 |
| VERSUS | § | SECTION: B |
| COLUMBIA GULF TRANSMISSION COMPANY, KOCH GATEWAY PIPELINE COMPANY | § § | MAGISTRATE: 5 |

PARISH OF ORLEANS

STATE OF LOUISIANA

**AFFIDAVIT OF ROBERT H. CHABRECK**

BEFORE ME, the undersigned authority, personally came and appeared ROBERT H. CHABRECK, Ph.D. who, being first duly sworn did depose and say as follows:

I have been conducting research in Louisiana Coastal marshes for 40 years and have worked in Terrebonne Parish and the vicinity of Township 18 South, Range 13 East, Section 16 on many occasions. I type-mapped marsh all of southern Louisiana in 1968, 1978, 1988 and 1997 and classified the marsh at issue in this case as coastal fresh marsh. I have conducted marsh studies in other fresh and brackish marsh areas of Terrebonne Parish beginning in 1960 and continuing on to the present time. Attached to this affidavit are copies of my current resume, list of recent cases in which I provided expert testimony, and publications list, all of which are adopted herein by reference.

I am familiar with the Terrebonne Parish School Board property in Section 16, Township 18 South, Range 13 East ("Section 16" or School Board property"), in Terrebonne Parish at the site of natural gas pipeline operations by Columbia Gulf Transmission Company and Koch Gateway Pipeline Company (collectively referred to as "Defendants"). Canals have been constructed on the Terrebonne Parish School Board property. I have examined the site previously on several occasions, including August 14, 2000, and September 9, 2000, and I am generally familiar with it. I understand

1 of 5



that Terrebonne Parish School Board is the owner of property and has filed suit against Defendants for damages to that property. The property is bordered on all sides by land owned by Continental Land & Fur Company.

Prior to construction of the canal system dredged by the Defendants, much of the marsh in Section 16 could be classified as flotant or floating freshwater marsh. Floating marshes in Terrebonne Parish are a product of subsidence. These marshes actually began as wet prairies containing grasses, sedges, and other herbaceous plants growing on firm mineral soil (silts and clays) originally deposited as alluvial sediments by the Mississippi River. The plants were firmly rooted in the mineral soil and were able to resist water currents and erosion.

After the Mississippi River abandoned this region, including Terrebonne Parish, and active sedimentation ceased, the region was subject to fairly rapid subsidence. After many years, the mineral soil deposited by the river had subsided to a depth in some areas that plant roots were unable to reach for attachment. As the mineral soil subsided, residue from plants was deposited each year to form new soil. Wet soil produces anaerobic conditions that resist decomposition and allow plant residue to accumulate and form new soil. In the absence of river sediment, the new soil was highly organic and much lighter in weight than the original mineral sediment. In fact, plant debris is so light that it will only accumulate in an area that is free of tidal currents and water movement. With only a slight current, the plant particles will be carried away.

As the mineral soil continued to subside, the organic layer continued to build and a floating mat of plant residue developed. The depth to the mineral soil below floating mats in some areas of Terrebonne Parish was as much as several feet. A band of water often exists between the floating mat and the mineral soil.

The long-term maintenance of floating mats, like their creation, requires the absence of water

movement or currents that will erode the light-weight organic particles from the floating mats. The greatest erosion is from the bottom of the floating mats where particles are less consolidated, and plant roots are not present to hold the particles together. Within a period of several months to a year, a large floating mat can erode away when subjected to frequent and strong water currents.

Freshwater marsh and swamp on the Terrebonne Parish School Board property developed under wet and waterlogged conditions and with no water movement or currents to erode and export plant residue that fell to the marsh surface. As a result, organic matter accumulated in the soil and was the principal component of the upper layers of the soil.

Marsh is damaged or destroyed in two ways, by natural and man-made causes. One of the man-made causes is pipeline canals. The canals cause loss in two general ways. Marsh is destroyed when marsh is actually dredged out to create a canal and when spoil from dredging is placed to create levees that destroy the area of marsh where the levees are formed. These types of marsh loss are known as direct impacts.

However, marsh loss can also be caused by indirect impacts. There are numerous natural and man-made causes that can lead to indirect impacts of wetlands. The specific cause or causes of damage to each piece of property or area of marsh are individual and unique. In other words, just because one piece of property suffers from direct and indirect impacts due to one cause or causes does not mean that another piece of land will suffer direct and indirect impacts due to the same cause or causes.

For example, saltwater intrusion through breaks or breaches in pipeline canals may be the cause of destruction on one piece of land while waves from boat traffic through breaks or breaches in pipeline canals on another piece of marsh property may be the cause of marsh loss on that other piece of property. Since every piece or area of marsh property owned by Terrebonne Parish School

Board may be destroyed or damaged in a unique way, field studies and investigations must be conducted to determine the exact causes of marsh damage and extent of damage. Even though historical aerial photographs may show that a piece of property is apparently eroding and damaged as the result of oil and gas activities, theories of damage must be tested or confirmed through field work. For example, saltwater intrusion cannot be confirmed until water samples are taken in a freshwater marsh.

The damages to Section 16 are related to the pipeline canals dredged by the Defendants through Section 16 for the purpose of natural gas operations. The purpose of canal levees is to prevent drainage and erosion of the adjacent marshes by a canal. The canals in Section 16 were not properly maintained, and levees along the canals were allowed to deteriorate, so that breaks or breaches were formed in the levees and allowed to remain over a period of several years.

The breaches in the levees along the canals provided a connection that hydrologically linked tidal waters of Little Horn Bayou, Atchafalaya River, and Gulf of Mexico to sensitive, floating freshwater marsh in Section 16. The surging or flushing action associated with tidal cycles has gradually eroded the organic soil of the marsh and flushed it out through the levee openings. As a result of the erosive action, healthy freshwater marsh in Section 16 has been converted to open water and has allowed water hyacinths, an exotic pest plants, to spread over much of the Terrebonne Parish School Board property. The results of my field work to determine the causes of damage and extent of damage on the School Board's property are outlined in the following attached reports which are adopted herein by reference: (1) "Thickness of the Marsh Root Mat in Section 16, T18S-R[1]3E, Terrebonne Parish, Louisiana, (2) "Evaluation of Damages
To Property of the Terrebonne Parish School Board in Township 18 South, Range 13 East," and (3) "Field Survey of Wetland Damage Associated with Pipelines in Section 16, T18S-R13E, Terrebonne

Parish, Louisiana."

s// Robert H. Chabreck, Ph.D.<br>
**ROBERT H. CHABRECK, Ph.D.**

SWORN TO AND SUBSCRIBED before me in ___New Orleans___, ___Louisiana___ this __28th__ day of __December__, 200__0__.

Original Signed By<br>
Joseph G. Jevic III<br>
Notary Public

I hereby certify that the foregoing is a true and correct copy of the Affidavit of Robert H. Chabreck that was signed by Affiant on December 28, 2000 and notarized by the undersigned on the Same date.

Joseph G. Jevic III
Notary Public