UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **TERREBONNE PARISH SCHOOL BOARD** | * CASE #00-0319 |
| | * |
| | * SECTION "B" |
| VERSUS | * |
| | * MAGISTRATE 5 |
| **COLUMBIA GULF TRANSMISSION COMPANY and KOCH GATEWAY PIPELINE COMPANY** | * |
| | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### DEFENDANT KOCH GATEWAY PIPELINE COMPANY'S MOTION AND INCORPORATED MEMORANDUM FOR LEAVE TO FILE EXHIBIT IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND STATEMENT OF UNCONTESTED MATERIAL FACTS

**NOW INTO COURT**, through undersigned counsel, comes defendant, Koch Gateway Pipeline Company ("Koch"), who moves this Honorable Court for leave to file the attached Exhibit 9 and attached Statement of Uncontested Material Facts, in connection with Koch's previously filed Motion for Summary Judgment. In support of same, Koch would show as follows:

1.

On December 28, 2000, pursuant to deadlines set by this court, Koch filed a Motion for Summary Judgment, In Whole or Part.

2.

In connection therewith, Koch referenced ten (10) exhibits, identifying same by number. A review of the conformed copy of the pleading filed by Koch reveals that Koch

8621

apparently inadvertently failed to attach Exhibit 9 referenced in Koch's Motion for Summary Judgment. A copy of Exhibit 9 is attached hereto. Exhibit 9 is referenced in Koch's Memorandum In Support of its Motion for Summary Judgment, in connection with the issue of prescription. A copy of Exhibit 9 has been provided to all opposing counsel.

3.

Additionally, at the time of filing, Koch inadvertently failed to include its Statement of Uncontested Material Facts. Koch's statements are attached hereto.

4.

Koch would show that filing of these items in connection with the previously filed Motion for Summary Judgment are necessary for equity, and will not unduly delay these proceedings.

**WHEREFORE**, defendant, Koch Gateway Pipeline Company, prays that it be granted leave of court to file the attached Exhibit 9 in support of its Motion for Summary Judgment and Statement of Uncontested Material Facts in connection with its Motion for Summary Judgment.

Respectfully submitted,

_____
ROBERT J. YOUNG, III (#19230)
YOUNG, RICHAUD & MYERS
1100 Poydras Street, Suite 1515
New Orleans, LA 70163
(504) 585-7750

Attorneys for defendant,
***KOCH GATEWAY PIPELINE COMPANY***

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been forwarded to all counsel of record via hand-delivery, **_facsimile_** and/or by placing a copy of same in the U.S. Mail, postage pre-paid, on this 29th day of December, 2000.

ROBERT J. YOUNG, III

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **TERREBONNE PARISH SCHOOL BOARD** | * | CASE #00-0319 |
| | * | |
| | * | SECTION "B" |
| VERSUS | * | |
| | * | MAGISTRATE 5 |
| **COLUMBIA GULF TRANSMISSION COMPANY and KOCH GATEWAY PIPELINE COMPANY** | * | |

* * * * * * * * * * * * * * * * *

## ORDER

Considering the above and foregoing motion:

**IT IS HEREBY ORDERED** that Koch Gateway Pipeline Company be and the same is hereby granted leave of court to file the attached Exhibit 9 in support of its Motion for Summary Judgment and Statement of Uncontested Material Facts in connection with its Motion for Summary Judgment.

**NEW ORLEANS**, Louisiana, this 3rd day of ~~December~~ January, 2001.

_____
JUDGE

8621

```
 1      PROCEEDINGS OF THE TERREBONNE PARISH SCHOOL BOARD
 2
 3      FINANCE, INSURANCE AND SECTION 16 LANDS COMMITTEE
 4
 5                      AUGUST 19, 1996
 6
 7
 8
 9
10
11      APPEARANCES:
12
13           Mr. Donald Duplantis, Chairman; Mr. Charlie
14           Vandercook, Vice-Chairman; Mr. Rickie Pitre,
15           Vice-President; Mr. Roger Dale DeHart,
16           President; Mrs. Frances Modisette; Mr. John
17           Pizzolatto; Mr. Todd Pellegrin; Mr. Frank
18           Fudesco, Superintendent; and staff members.
19
20
21
22
23                                         Pitre-1
24              ORIGINAL                   EXHIBIT
25
```

NORTON KAISER COURT REPORTERS, INC.

TEL. (225) 924-3888   FAX (225) 924-3831

TPSB 13   

```
 1                    P R O C E E D I N G S
 2            SPEAKER 1:   Don Duplantis?
 3            MR. DUPLANTIS:   Here.
 4            SPEAKER 1:   Mr. Charlie Vandercook?
 5            MR. VANDERCOOK:   Present.
 6            SPEAKER 1:   Mr. Nelson Kramer?
 7               (No response.)
 8            SPEAKER 1:   Mr. Rickie Pitre?
 9               (Inaudible)
10            SPEAKER 1:   Mr. Peter Rhodes?
11               (Inaudible)
12            SPEAKER 1:   We have four members of
13   the committee present along with Mr. Pizzolatto and
14   President DeHart and the superintendent,
15   Mr. Chairman.
16            CHAIRMAN DUPLANTIS:   Thank you,
17   sir.  Item three is matter bearing upon potential
18   claims the school board may have relative to certain
19   school board lands.  Mr. Michael St. Martin?
20            MR. ST. MARTIN:   Good evening.  As
21   you may or may not know -- you probably do know --
22   I'm the lessee of about a third of the section
23   properties.  I leased from the school board
24   Section 16, Township 18, Range 17, which is just --
25   it's just south of Mandalay Plantation, and it is
```

```
 1   bisected by the intracoastal canal.
 2                  In connection with the lease that I
 3   have from the school board -- I thank you very much
 4   for the lease, by the way.  We've paid you a hundred
 5   and fifty-five thousand dollars, I think, of rent in
 6   the past year, and we know you'll spend it wisely.
 7                  In connection with that lease,
 8   we're in the process of evaluating a drilling
 9   program, and our engineers have brought to our
10   attention that the school board property has been
11   seriously damaged by canal activity in that section
12   over the past twenty, thirty years.  I don't have the
13   exact dates that these canals were dug.
14                  I brought with me tonight an aerial
15   photo that shows all of that Section 16, the entire
16   Section 16, as well as the surrounding property; and
17   I surround the school board on three sides, my own
18   privately owned land.
19                  The canal activity was conducted
20   partly as a drilling venture and partly as a pipeline
21   venture.  The pipeline is still active; however, the
22   production that was in those location canals has long
23   been gone.
24                  And what has happened, we
25   discovered while doing the engineering work on our
```

```
 1    property and on this lease, is that, once the
 2    intracoastal levee was breached by these location
 3    canals and by these pipeline canals, a sloshing
 4    effect has taken place over the years and is washing
 5    out the entire north half of Section 16.
 6                    What just a few years ago was
 7    healthy marsh is now turning into a massive lake on
 8    the north side of the intracoastal.  The condition
 9    gets worse with different tidal conditions and
10    different levels of vessel traffic in the
11    intracoastal because each big tow that comes through
12    creates an artificial high and low tide several
13    times.
14                    Just in the past six months that we
15    have been doing our engineering work preparing to
16    drill, we've seen substantial losses of property to
17    the school board's lands.  My own property is being
18    damaged by another canal just west of this one, and
19    we've instituted suit against the oil company that
20    dug the canal.
21                    We are proceeding to trial with
22    that case in January of this coming year and expect
23    to be successful in recovering the value of the
24    restoration, of restoring that property to its
25    healthy marsh state, filling the canal, removing all
```

```
 1    the trees and planting adequate marsh grasses.  And
 2    that's what we've insisted of the Court, and I think
 3    the Court is going to find in our favor.
 4               If this canal is -- if this section
 5    is indicative of the problems that the school board
 6    may have on other Section 16 properties in Terrebonne
 7    Parish, you have a monstrous amount of damage
 8    occurring to the school board properties, and action
 9    is going to have to be taken to stop the damage and
10    to repair it.  What action you take, of course, is up
11    to you-all.
12               I would suggest to you that if you
13    wish to have your school board attorneys meet with
14    us, we'll be happy to meet with you at any time
15    that's convenient.  If your land manager wishes to go
16    onto this property, because it's a little bit
17    difficult to get to, we'll provide the air boats and
18    assistance that can be launched from our farm on
19    Highway 90.
20               This -- it's difficult to show you
21    because it's a large (inaudible) map, but this
22    section that I'm pointing to right here is a
23    Section 16.  You can see all this water activity
24    that's located right here on the intracoastal
25    (inaudible), and this is the location canal, and this
```

1    is the pipeline canal.

2                Our lease (inaudible).  We have a
3    series of aerial photos that are black and whites
4    that we had taken in connection with our litigation.
5    There are about a hundred of these photos, and they
6    will show you what's going on immediately west of the
7    Section 16, and it's pretty much the same that's
8    going on on your property.

9                The solution is to fill in the
10   canals, except in the case of the pipeline canal,
11   which can't be filled in, fill in the location
12   canals, remove the trees as it's being done.  It is
13   all humanly possible, and it should be done, and the
14   bank of the intracoastal has to be replaced there or
15   this activity is going to continue.  It will never
16   get better.

17               The whole levee of the intracoastal
18   has to be rebuilt at that site.  I think that you
19   have similar damage in other places of the parish,
20   although we haven't studied those.  Thank you for
21   your attention.

22               SPEAKER 2:  Thank you,
23   Mr. St. Martin.  Mr. Pitre?

24               MR. PITRE:  (Inaudible).

25               MR. ST. MARTIN:  Yes.  My suit is

```
 1    pending in federal court in New Orleans against Mobil
 2    Oil Company.  It's going to trial in January.  We've
 3    had all the studies done by our hydrologists and
 4    scientists, and what I have recommended to you
 5    tonight was, the filling, backfilling, planting of
 6    grass and what have you is probably what you should
 7    do, but you will have to discuss that.
 8                       (Inaudible)
 9              MR. ST. MARTIN:  The plants are
10    just south of the intracoastal as part of that same
11    production.
12                       (Inaudible)
13              MR. CARREKER:  I'm not familiar if
14    they are, no, sir.
15                       (Inaudible)
16              SPEAKER 3:  I guess maybe the idea
17    was to get the -- maybe Mr. St. Martin would consider
18    meeting with Dr. Fudesco and Kip, and maybe plan a
19    course of action and come back to us.
20                       (Inaudible)
21              SPEAKER 3:  That's fine.
22                       (Inaudible)
23              SPEAKER 3:  And involve
24    Mr. Carreker and maybe Mr. -- who's our -- Veazey?
25              MR. CARREKER:  Mr. Veazey is our
```

```
 1   resident engineer.  Whether or not he's the proper
 2   person to get into land restoration, we'll have to
 3   discuss.
 4                   SPEAKER 3:  Okay, thanks.  Motion
 5   by Mr. Pitre -- motion by Mr. Pitre, seconded by
 6   Mr. Vandercook.  Discussion, Mr. Pitre?
 7                   MR. PITRE:  (Inaudible).
 8                   MR. ST. MARTIN:  Your acreage on
 9   the north side is about 425, 440 acres.  I think I
10   have under lease, a mineral lease, about -- don't
11   hold me to this, about 200 acres.  You might also
12   wish us luck.
13                   (Inaudible)
14                   SPEAKER 3:  Mr. Vandercook?
15                   MR. VANDERCOOK:  I didn't get an
16   opportunity to look at that.  Are those dead end
17   canals?  That's just --
18                   MR. ST. MARTIN:  They should be.
19   They should be dammed, or they should've been dammed;
20   and, because they were not adequately dammed, that's
21   one of the reasons why this tremendous amount of
22   damage has occurred.  If they had been dammed
23   originally, you wouldn't have this artificial tide.
24                   MR. VANDERCOOK:  But do they lead
25   anywhere?  I didn't see...
```

```
 1                    MR. ST. MARTIN:  No.  They go into
 2   your property, and the pipeline canal goes from your
 3   property onto mine.  The dams that were on the
 4   pipeline property -- on the pipeline canal are washed
 5   out.
 6                    MR. VANDERCOOK:  Okay.  Thank you.
 7                    MR. ST. MARTIN:  Sure.
 8                    SPEAKER 3:  Mr. DeHart?
 9                    MR. DEHART:  Thank you.
10   Mr. St. Martin, I want to appreciate you bringing
11   this to our attention.  I said long ago that we had a
12   lot of erosion throughout the parish of Section 16
13   lands that many of us are not aware of and yet we
14   don't have a direct land manager to go and inspect
15   that property to where we can prevent this.  But you
16   stated that right now you're in litigation with
17   Mobil --
18                    MR. ST. MARTIN:  Yes, sir.
19                    MR. DEHART:  -- in one area?  Is
20   that the only oil company, to your knowledge, on the
21   property you looked at that was in there?
22                    MR. ST. MARTIN:  No.  In this
23   Section 16, there was a lot of activity.  The
24   ancestor to Freeport McMoran was active in this
25   area.  Mobil was active.  Superior was.  Superior was
```

1  bought out, of course, and merged with Mobil, and
2  Quintana (phonetic) has -- had some activity in this
3  area.
4              So I'm not -- I have not looked
5  into the history of all of your canals, only my own,
6  and those are the actors that I found and the damage
7  that was caused in the -- the case in suit was caused
8  by Mobil.
9              On the immediate east side of your
10 property, I have another mile and a half scar that
11 was caused by Freeport-Mac. I've been negotiating
12 with them to no -- and, at this point, if we have not
13 settled with them in the next month, we're going to
14 sue them, also, and we'll sue them in Terrebonne
15 Parish.
16             MR. DEHART: Well, I want to thank
17 you again for bringing this information to us, and I
18 hope and encourage the committee to support this
19 motion, that I feel that if we're going to do
20 anything, I'd like to work with Mr. St. Martin and
21 his firm. And really and truly, I know he serves
22 this parish well.
23             MR. ST. MARTIN: Thank you.
24             MR. DEHART: And I want to thank
25 you for everything else you do for the school

NORTON KAISER COURT REPORTERS, INC.

TEL. (225) 924-3888 FAX (225) 924-3831

TPSB 1338

1  system.  This is just another thing that I know we
2  appreciate your help with.
3              MR. ST. MARTIN:  I appreciate it.
4  Thank you.
5              SPEAKER 3:  Anyone else?  Any
6  objections?
7              (Inaudible)
8              SPEAKER 3:  Thank you,
9  Mr. St. Martin.
10
11
12              (Matter concluded.)
13
14
15
16
17
19
20
21
22
23
24
25

```
 1    STATE OF LOUISIANA
 2    PARISH OF EAST BATON ROUGE
 3            I, SHARON S. KAISER, a Certified Court
 4    Reporter and a Registered Professional Reporter, do
 5    hereby certify that the foregoing is a true and
 6    correct excerpt of the Terrebonne Parish School Board
 7    Finance, Insurance and Section 16 Lands Committee
 8    meeting held in the preceding matter on August 19,
 9    1996, as taken by me, via magnetic tape recording, in
10    Stenographic machine shorthand, complemented with
11    magnetic tape recording, and thereafter reduced to
12    transcript, to the best of my ability and
13    understanding, using Computer-Aided Transcription.
14            I further certify that I am not an attorney
15    or counsel for any of the parties; that I am neither
16    related to nor employed by any attorney or counsel
17    connected with this action; and that I have no
18    financial interest in the outcome of this action.
19            Baton Rouge, Louisiana, this 21st day of
20    September, 2000.
21
22
23                                    _____
24                                    SHARON S. KAISER, CCR, RPR
                                      Certificate No. 88021
25
```

NORTON KAISER COURT REPORTERS, INC.

TEL. (225) 924-3888 FAX (225) 924-3831

TPSB 1340

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **TERREBONNE PARISH SCHOOL BOARD** | * CASE #00-0319 |
| | * |
| | * SECTION "B" |
| VERSUS | * |
| | * MAGISTRATE 5 |
| **COLUMBIA GULF TRANSMISSION COMPANY and KOCH GATEWAY PIPELINE COMPANY** | * |

* * * * * * * * * * * * * * * * *

### STATEMENT OF UNCONTESTED MATERIAL FACTS

**NOW INTO COURT**, through undersigned counsel, comes defendant, Koch Gateway Pipeline Company ("Koch"), who in support of its Motion for Summary Judgment filed contemporaneously herewith, would submit the following Statement of Undisputed Facts which are material to the disposition of Koch's Motion for Summary Judgment:

1.

The Terrebonne Parish School Board ("TPSB") alleges in its Petition that it has owned all Section 16, Township 18 South, Range 13 East in Terrebonne Parish, Louisiana.

2.

On December 18, 1957, TPSB granted a right-of-way and servitude agreement in favor of Koch, a copy of which agreement is attached as Exhibit 1 in support of Koch's Motion for Summary Judgment.

8621

3.

Also on December 18, 1957, TPSB executed in favor of Koch a release document, a copy of which is attached as Exhibit 2 to the Koch's Motion for Summary Judgment.

4.

In connection with the right-of-way and servitude agreement, Koch paid TPSB $366.60 for same.

5.

Pursuant to the damage release, Exhibit 2, Koch paid $1,466.40 to TPSB.

6.

Subsequent to execution of the right-of-way agreement and damage release, Koch and/or its contractor dredged a flotation canal on TPSB's Section 16 property, which flotation canal was approximately 40 feet in width.

7.

During dredging of this flotation canal, Koch and/or its contractors deposited material removed from the ditch onto either side of the canal, creating "spoil banks."

8.

Since Koch and/or its contractor originally dredged the canal in approximately 1958, neither Koch nor any contractors working therefore have done any additional dredging of the canal located on TPSB's property, nor deposited any additional materials onto the "spoil banks," or otherwise performed any activities in connection with the spoil banks located on TPSB's property.

9.

Prior to filing this lawsuit in October, 1999, TPSB never made demand, whether formal or informal, judicial or otherwise, upon Koch to backfill Koch's canal located on TPSB's property, or maintain or perform any work in connection with the spoil banks adjacent thereto.

Respectfully submitted,

_____
ROBERT J. YOUNG, JR. (#13763)
ROBERT J. YOUNG, III (#19230)
YOUNG, RICHAUD & MYERS
1100 Poydras Street, Suite 1515
New Orleans, LA 70163
(504) 585-7750

Attorneys for defendant,
**KOCH GATEWAY PIPELINE COMPANY**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been forwarded to all counsel of record via hand-delivery, facsimile and/or by placing a copy of same in the U.S. Mail, postage pre-paid, on this 29th day of December, 2000.

_____
ROBERT J. YOUNG, III