FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2001 JAN -5  PM 4: 19

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| TERREBONNE PARISH SCHOOL BOARD | * | CASE NUMBER: 00-0319 |
| | * | |
| VERSUS | * | SECTION: "B" |
| | * | |
| COLUMBIA GULF TRANSMISSION COMPANY AND KOCH GATEWAY PIPELINE COMPANY | * | MAGISTRATE: 5 |

*******************************************

## COLUMBIA GULF TRANSMISSION COMPANY'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE EVIDENCE OF STUDIES AND PLANS ON TERREBONNE PARISH SCHOOL BOARD SECTION 16 LANDS OTHER THAN SECTION 16, TOWNSHIP 18 SOUTH, RANGE 13 EAST

MAY IT PLEASE THE COURT:

Defendant, Columbia Gulf Transmission Company ("Columbia Gulf"), submits this Memorandum in Opposition to the motion filed by the plaintiff, Terrebonne Parish School Board ("TPSB"), seeking to exclude evidence of studies and reports that show erosion on other Section 16 lands of TPSB similar to the erosion complained of by TPSB in this case on Section 16, Township 18 South, Range 13 East. TPSB argues that since the causes of erosion are unique as to each Section 16, evidence of what caused erosion in one Section 16 area would be irrelevant to the cause of erosion in another Section 16 land.  While Columbia Gulf would acknowledge that the cause and extent of erosion in one Section 16 may differ from the cause and extent of erosion in another Section 16, there are more similarities than differences, and evidence regarding erosion

in one Section would be relevant to considering what may have caused erosion in another. Moreover, knowledge of erosion and its causes on any Section 16 is highly relevant to prescription issues.

Since this case involves a bench trial, it would appear that the issues raised by TPSB would be better addressed during the course of the trial when the exhibits are offered in the context of other evidence. This Court is obviously capable of ruling on what is admissible and what is not at the time the evidence is offered, and this Court would have no difficulty in disregarding any evidence it deems irrelevant or otherwise inadmissible.

To illustrate this point, consider the issues raised by TPSB's efforts to exclude the deposition of Mr. Malcolm Poiencot and the March 4, 1998 field notes prepared by Mr. Poiencot regarding his inspection of the Section 16 that is the subject of this suit. In his field notes he reports that the Section "is in water, the marsh has been eaten by the nutria rats".

TPSB argues that the notes and Mr. Poiencot's deposition should be excluded because he is not a wetlands expert and is not qualified to testify regarding the effects of nutria on wetlands. Several School Board members testified in their depositions that Mr. Poiencot was retained by TPSB as its expert to examine the Section 16 lands for damages, particularly damages from seismic operation. Mr. Poiencot testified that he had ample experience in that regard having lived in Terrebonne Parish all his life and having worked for LL&E as a land man for many years. Now that Mr. Poiencot has field notes and testimony that do not suit TPSB's purposes, TPSB suggests he is not a person to be heard.

Obviously, this Court is capable of hearing what Mr. Poiencot has to say, reviewing his field notes and giving his testimony the weight it deserves in the context of other evidence presented at trial.

TPSB suggests that Rule 403 of the Federal Rules of Evidence requires the exclusion of the exhibits pertaining to studies and reports of erosion on other Section 16 lands on the basis that their probative value is outweighed by the undue prejudice it may cause in this Court's decision process. Perhaps TPSB does not share the defendant's confidence that this Court can give the evidence its proper weight, but the Fifth Circuit has made it clear that the trial court in a bench trial should have no difficulty in dealing with such issues during trial.

As pointed out in *Gulf States Utilities, Co. v. Ecodyne, Corp.*, 635 F.2d 517 (5th Cir. 1981):

> The exclusion of this evidence under Rule 403's weighing of probative value against prejudice was improper. <u>This portion of Rule 403 has no logical application to bench trials</u>. Excluding relevant evidence in a bench trial because it is cumulative or a waste of time is clearly a proper exercise of the judge's power, but excluding relevant evidence on the basis of "unfair prejudice" is a useless procedure. Rule 403 assumes a trial judge is able to discern and weigh the improper inferences that a jury might draw from certain evidence, and then balance those improprieties against probative value and necessity. <u>Certainly, in a bench trial</u>, the same judge can <u>also exclude those improper inferences</u> from his mind in <u>reaching a decision</u>. (Emphasis supplied)

*Id.* at 519.

*Gulf States* was followed in *Schultz v. Butcher*, 24 F.3d 626 (4th Cir. 1994) where the Court pointed out:

-3-

> Rule 403 was designed to keep evidence not germain to any issue outside the purview of the jury's consideration. For a bench trial, we are confident that the District Court can hear relevant evidence, weigh its probative value and reject any improper inferences.

*Id.* at 632.

Obviously, this Court is certainly capable of hearing the relevant evidence and weighing its probative value and rejecting any improper inferences that might create the unfair prejudice that TPSB has failed to define or describe.

The studies and reports that TPSB now seeks to exclude clearly demonstrate that TPSB has long been aware of the erosion of its Section 16 marshlands and the possible causes of that erosion. The studies and reports do not single out Section 16 Township 18 South, Range 13 East as being different from the other Section 16 lands, nor do the reports indicate that Section 16, Township 18 South, Range 13 East was not experiencing erosion similar to the other Section 16 lands. As such, the reports and studies are clearly relevant in showing that TPSB knew or should have known of the erosion problem in Section 16, Township 18 South, Range 13 East. Therefore, at the very least, such reports and studies would be relevant as to notice and the issues of prescription and mitigation of damages.

While the subject exhibits are clearly relevant as to notice, TPSB suggests that such notice in unimportant because prescription is not an issue. TPSB argues that prescription does not apply because the defendants are continuing operations on TPSB property, and whether the claims are based on contract or tort, the continuing operation interrupts prescription.

If the claims are based on contract, TPSB is apparently asserting some "continuing breach theory" whereby prescription does not commence to run if contractual breaches and/or damages are continuous. Only one reported case appears to address such a theory. See *Lewis v. Sohio Petroleum Co.*, 528 So.2d 1084 (La. App. 3rd Cir. 1988); *writ granted, judgment rev'd*, 532 So.2d 754 (La. 1988).

*Lewis* involved a claim by right of way grantors that Sohio breached its servitude by allowing canal width to exceed the contractually allowed 65 feet, thereby causing erosion and severe surface and ecological damage. The evidence showed that the canals exceeded the contractually allowed width as early as 1953. Plaintiffs argued that prescription had not yet begun to run because damages were continuing. The court flatly rejected this argument, stating that there was no authority for applying the "continuing tort" doctrine in the context of a contract. The Supreme Court, per curiam, reversed the grant of summary judgment on the prescription issue and remanded with the instruction that the exception of prescription be referred to the merits. There is no further record of this case, and Columbia Gulf has not found any further trace of this theory.

To the extent TPSB is arguing that prescription has not started to run in this case because Columbia Gulf continues to transport gas through its pipeline running across plaintiff's land, its argument is similar to the *Lewis* "continuing action" theory, although TPSB carries it one illogical step further by relying on the continuing exercise of contractual rights rather than continuing breaches to supposedly interrupt prescription. There is absolutely no authority in Louisiana law

for the proposition that prescription on a breach of contract claim is interrupted indefinitely during the pendency of the contract.

In a similar case, another section of this Court in *St. Martin v. Quintana*, No. Civ. A 98-2095, 1999 WL 232635 (E.D. La. April 19, 1999) held that plaintiff's breach of contract claims had prescribed because it found the breach in question to be failure to restore the property "as near as is practical to its original condition." The court found that such a failure would have been obvious to anyone observing the canal over 20 years ago. *St. Martin v. Quintana, supra*, at 3. Similarly, the studies TPSB now seeks to exclude made obvious years ago the possibility of, if not the fact of, the erosion it now complains of.

To the extent TPSB's claims are styled as torts[1], the applicable prescriptive period is one year. Specifically, with respect to real property, La. C.C. art. 3493 provides:

> When damage is caused to immovable property, the one year prescription commences to run from the day the owner of the immovable acquired, or <u>should have acquired</u>, knowledge of the damage. (Emphasis supplied)

Obviously, the studies showing erosion of other Section 16 lands should have, at the very least, put TPSB on notice of the potential for erosion of the Section 16 at issue here. Having been put on notice, it would have been prudent to study the extent of any damage at that time and Columbia Gulf believes that the one year period should have run from that time.

---

[1] Columbia Gulf has filed a Motion for Judgment on the Pleadings/Motion for Summary Judgment dismissing all tort claims.

Similar to its "continuing breach theory," to avoid the one year prescription and argue that prescription is not an issue, TPSB attempts to rely on a continuing tort theory. The theory of continuing tort has its roots in property damage cases and requires that the operating cause of the injury be a continuous one which results in continuous damages. *See, Crump v. Sabine Rider Authority,* 737 So.2d, 720, 725 (La. 1999). The lower court in *Crump* stated that in order to prevail on a continuing tort theory, the plaintiff must allege both "continuous action" and "continuous damage." *Crump v. Sabine River Authority*, 715 So.2d 762, 766 (La. App. 3 Cir. 1998).

The *Crump* case involved suit by a landowner against a state agency. The state agency had the duty to manage a reservoir. However, a third party built an unauthorized canal on the agency's reservoir property which altered the normal flow of water of a nearby bayou, effectively denying the landowner access to a lake. The landowner sued the agency seeking injunctive relief and money damages for loss of use of the property, diminished value and emotional distress. One of the state's defenses was that the landowner's claim had prescribed. The appellate court affirmed the trial court's denial of the plea of prescription by the state agency, holding that the record clearly supported the application of the continuing tort theory. The appellate court reasoned that the state agency's continuous contacts with the landowner and repeated representations that it would resolve the water flow problems, as well as its unsuccessful attempts to do so satisfied the "continuous action" element. The "continuous damage" element was met, according to the appellate court, because the unauthorized canal adversely affected the landowner's

access rights and was never rectified. The Louisiana Supreme Court disagreed, and reversed the appellate court's decision, holding the landowner's claim was prescribed.

The Supreme Court found that the construction of the unauthorized canal did not fulfill the "continuous action" requirement of a continuing tort that could suspend the running of prescription. Specifically, the Supreme Court stated:

> . . . the defendant's duty to remove the canal would stem from its obligation under La. Civ.Code article 2315 to repair damage caused by its tortuous conduct. However, the breach of the duty to right a wrong and make the plaintiff whole simply cannot be a continuing wrong which suspends the running of prescription, as that is the purpose of any lawsuit and the obligation of every tortfeasor. Thus, plaintiff's argument that the defendant's persistent refusal to remove the canal constitutes continuous tortuous conduct is insupportable. We therefore conclude that the plaintiff has failed to demonstrate any continuous tortuous conduct on the part of the defendant.

*Crump*, 737 So.2d at 729 (citations omitted).

The canal was completed in 1971, suit was not filed until 1992 and since the Court found that the continuing tort theory could not be applied under the facts presented, the landowner's claim was prescribed.

Columbia Gulf suggests that the foregoing authorities demonstrate that TPSB is wrong in its assertion that the pipeline canal constitutes "continuous action" causing "continuous damage" to the marsh through erosion thereby satisfying both elements of a continuing tort. Specifically, in *Crump,* the Supreme Court explained that "the breach of the duty to right a wrong and make the plaintiff whole simply cannot be a continuing wrong which suspends the running of prescription, as that is the purpose of any lawsuit and the obligation of every tortfeasor." *Crump*,

737 So.2d at 729. The alleged failure by Columbia Gulf to maintain the flotation ditch for its pipeline is a single wrong similar to the state agency's failure to remove the offending canal in *Crump*. Thus, prescription is very much a live and hotly contested issue in this case.

## CONCLUSION

What TPSB knew and when are crucial issues both with respect to prescription and failure to mitigate. Columbia Gulf suggests that TPSB's motion in limine to exclude evidence of consultant studies and plans on Section 16 lands should be denied since the relevance of the exhibits can be determined in the context of the other evidence presented at trial; TPSB will not suffer any prejudice because this Court is fully capable of giving the exhibits their appropriate weight in the context of that evidence; and the exhibits are clearly relevant to the issue of prescription and mitigation of damages.

Respectfully submitted,

*Thomas R Blum*
Thomas R. Blum, T.A. (#3170)
James A. Burton (#3708)
Herman C. Hoffmann, Jr. (#6899)
Christina H. Belew (#1244)
SIMON, PERAGINE, SMITH & REDFEARN, L.L.P.
1100 Poydras Street
30th Floor - Energy Centre
New Orleans, Louisiana 70163-3000
Telephone: (504) 569-2030

Attorneys for Columbia Gulf Transmission Company

## CERTIFICATE OF SERVICE

I hereby certify that copies of the foregoing has been served upon all counsel of record by telecopier or by depositing same in the U.S. mail, postage prepaid and properly addressed this 5th day of January, 2001.

_____
Thomas R. Blum