

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| TERREBONNE PARISH SCHOOL BOARD * | | CASE NUMBER:  00-0319 |
| * | | |
| VERSUS * | | SECTION: "B" |
| * | | |
| COLUMBIA GULF TRANSMISSION * | | MAGISTRATE:  5 |
| COMPANY AND KOCH GATEWAY * | | |
| PIPELINE COMPANY * | | |

******************************************

### COLUMBIA GULF'S REPLY TO PLAINTIFF'S
### OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

MAY IT PLEASE THE COURT:

Columbia Gulf Transmission Company ("Columbia Gulf") submits the following memorandum to address the principal arguments raised by plaintiff, Terrebonne Parish School Board ("TPSB"), in its opposition to Columbia Gulf's motion for summary judgment as to all claims.

A.   **Columbia Gulf Has No Duty to Maintain the Flotation Ditch and Associated Spoil Banks.**

Whether Columbia Gulf has a duty to maintain the flotation ditch in which its pipeline is laid ("flotation ditch"), and the associated spoil banks created during the dredging of the ditch,

is the crucial legal question in plaintiff's suit against Columbia Gulf. The facts relevant to a determination of whether this duty exists are not in dispute. They are:

1. TPSB granted to Columbia Gulf a servitude "to construct, lay, maintain, operate, alter, repair, remove, change the size of and replace a pipeline and appurtenances thereto" over Section 16. The servitude further provided that Columbia Gulf "shall not be required to backfill the open flotation ditch excavated during construction" and that "the contract contains all of the representations, promises, terms and provisions of the agreements made by the parties hereto. See Exhibit 1 attached to Columbia Gulf's motion.

2. Columbia Gulf constructed a pipeline across TPSB's property pursuant to the servitude. In doing so, it utilized the prevailing construction method for laying a pipeline across wetlands in the mid-1960's, to-wit: use of a dredged flotation ditch (or canal). As part of this construction, spoil banks were created on each side of the flotation ditch.

3. Columbia Gulf has not maintained the flotation ditch or the associated spoil banks.

4. Until the filing of this suit, plaintiff has not called on Columbia Gulf to maintain the flotation ditch or associated spoil banks.

5. Three cuts have developed in the spoil banks of the flotation ditch over the years.

2

6. Columbia Gulf did not create, or take any action to cause, the cuts in the spoil banks.

7. During its existence for approximately 35 years, the flotation ditch has widened so that it now is about 116 feet wide, on average.

8. No action by Columbia Gulf, other than the original dredging of the flotation ditch, has caused this widening to occur.

It its original memorandum, Columbia Gulf has demonstrated why it (1) has no duty to maintain the spoil bank; (2) has not breached its contract with plaintiff; and (3) has no liability to plaintiff for the continued existence of the flotation ditch, including any adverse effects that its mere existence may have on plaintiff's property. In particular, it is abundantly clear that the servitude agreement imposes no obligation whatsoever on Columbia Gulf regarding the maintenance of the flotation ditch and associated spoil banks.

In an attempt to manufacture such a duty, plaintiff's have advanced primarily two arguments: the flotation ditch is an "appurtenance" of the pipeline, which Columbia Gulf agreed to maintain, and that, even there is no contractual duty to maintain the spoil banks, Columbia Gulf still is liable to plaintiff in tort for failing to do so.

TPSB's argument regarding "appurtenance" clearly lacks merit and is at odds with Louisiana law on the subject. Louisiana cases hold that an appurtenance is a thing which is necessary to or necessarily connected with the use and enjoyment of another thing. E.g., *Parks*

*v. Pine Bluff Sand & Gravel Co.*, 97-682 (La. App. 3rd Cir. 2/18/98), 712 So.2d 905 (pontoon pipeline used to carry away dredged sand was an appurtenance to the dredge); *Fontenot v. Louisiana Farm Bureau Casualty Ins. Co.*, 517 So.2d 1044 (La. App. 3rd Cir. 1987) (barn used to store materials related to use of rural house was appurtenance to the house); *Union Ferry Company v. Southern Improvement & Ferry Company*, 124 La. 759, So.2d 704 (1909) (bulkhead where ferry tied up was appurtenance to ferry because it was essential to its operation, but neighboring sidewalk was not, because it was on land and was not essential). Clearly, Columbia Gulf does not need the flotation ditch or the spoil banks to operate its pipeline. It has hundreds of miles of pipeline in Louisiana and other states where there is no flotation ditch in existence. If plaintiff had chosen to do so, it could have leveled the spoil banks and filled in the canal and Columbia Gulf would have had no ground for complaint as long as that process did not damage its pipeline or the attached valves and other appurtenances.

The language of the servitude agreement also shows that the flotation ditch is not an appurtenance of the pipeline. If the flotation ditch, which clearly was useful for the pipeline's construction, were an appurtenance to the pipeline, and therefore necessary for its continued operation, then there would have been no need for TPSB to relieve Columbia Gulf of its obligation to backfill it. The ditch would have had to stay open. The fact is that the ditch is simply a contractually agreed upon remnant of the construction process.

Finally, the flotation ditch cannot be an "appurtenance" to the pipeline because TPSB owns both the land and the ditch thereon. Civil Code article 491 provides:

4

> Buildings, other constructions permanently attached to the ground, standing timber, and unharvested crops or ungathered fruits of trees may belong to a person other than the owner of the ground. Nevertheless, they are presumed to belong to the owner of the ground, unless separate ownership is evidenced by an instrument filed for registry in the conveyance records of the parish in which the immovable is located.

It is undisputed that Columbia Gulf has only a servitude to use a portion of the section in question. There is no instrument, recorded or otherwise, evidencing Columbia Gulf's ownership of the ditch. The ditch, its spoil banks, and the land on which it was constructed, unquestionably are the property of TPSB. None of them are appurtenances of Columbia Gulf's pipeline.

With respect to TPSB's argument that *St. Martin v. Mobil*[1] case necessitates a finding in this case that Columbia Gulf had an implied duty to maintain the flotation ditch, the very significant differences between the facts and the servitude at issue in *St. Martin* as opposed to those in this case were extensively treated in Columbia Gulf's memorandum in support of summary judgment. Instead, the rule of law applicable to this case is set forth in *Ryan v. Southern Natural Gas Company*, 879 F.2d 162, 164 (5th Cir. 1989), where the court held:

> When a servitude is established by contract, the extent and mode of using the servitude is regulated by the contract. *See, Ogden v. Bankston*, 398 So.2d 1037, 1040-41 (La. 1981). A written agreement is the law between the parties and must be interpreted and enforced according to its terms. La.Civ.Code art. 1983; *Massie v. Inexco Oil Co.*, 798 F.2d 777, 779 (5th Cir. 1986) (applying Louisiana law).

---

[1] *St. Martin v. Mobil Exploration & Producing U.S., Inc.*, 224 F.3d 405 (5th Cir. 2000), *rehearing en Banc denied by*, ____F.3d _____ (5th Cir. (La.) 2000).

5

*Ryan* also firmly rejected the notion that general duties "to avoid unreasonable damages" may be superimposed upon a clear, unambiguous servitude agreement. *Ryan, supra* at 164.

Here, as in *Ryan*, the duty, if any, of Columbia Gulf to maintain the flotation ditch is governed by its servitude agreement. The agreement contains no provision requiring such maintenance, and should be enforced as written.

As to plaintiff's argument that Columbia Gulf is liable in tort, Columbia Gulf has demonstrated in its related motion to dismiss all claims sounding in tort, that this is a contract, not a tort, case.

One additional comment is in order. Even if tort law applied to this case, in order for Columbia Gulf to have liability in tort to plaintiff, plaintiff must show that Columbia Gulf breached the general tort duty that it owes to all other persons not to cause damage to another. It is undisputed that Columbia Gulf did not take any action which caused the flotation ditch to widen or which caused cuts to appear in the spoil bank. These matters occurred either because of the forces of nature or by the actions of third parties over whom Columbia Gulf had no control and, consequently, for whom it had no responsibility. Therefore, if Columbia Gulf had no duty to maintain the flotation ditch and associated spoil banks under the servitude agreement, it can have no liability to plaintiff in this case.

B.  **The Release in Favor of Columbia Gulf Covers All Claims for Damages Related to the Construction and Existence of the Pipeline and Flotation Ditch.**

In the section of its opposition dealing with the release executed by TPSB in favor of Columbia Gulf, plaintiff seems intent on putting up straw men so that it attempt to knock them down.  Contrary to plaintiff's assertions, Columbia Gulf does not claim that the release covers "all present or future known or unknown claims" (TPSB Opposition, p. 7).  Rather, Columbia Gulf claims that the release applies to present or future known or unknown claims related to the matters released.  Those matters include "the construction, operation, maintenance of a pipeline and appurtenances . . . in the place and manner such pipeline and appurtenances have been constructed and laid."  See Release attached as Exhibit 2 to Columbia Gulf's motion.

In the instant case, Columbia Gulf laid a 30" pipeline in a flotation ditch across TPSB's property.  The "manner such pipeline [was] constructed and laid" included use of a flotation ditch.  Therefore:  any damages caused by the dredging of the flotation ditch and its existence have been released; any damages caused by the continued existence of the flotation ditch and its spoil banks have been released; and, finally, damages which may result because the flotation ditch has widened as a result of the operation of the forces of nature have been released.

Plaintiff cites *Vizinat v. Transcontinental Gas Pipeline Corp.*, 552 So.2d 1237, 1239 (La. App. 3rd Cir. 1989) in support of its argument.  In ruling that a release did not cover claims which arose subsequent to its execution, the court in *Vizinat* interpreted a document which contained a provision not found in the Columbia Gulf release executed by plaintiff.  Thus, the

7

*Vizinat* court emphasized that the release then under consideration applied only to "claims or demands which the undersigned <u>now</u> have (has)".[2] *Id.* at 1239. There is no such limiting language in the Columbia Gulf release.

Therefore, the Columbia Gulf release applies to claims for damages arising out of the "construction, operation, maintenance" of its pipeline, even though the damages related to those activities do not occur or manifest themselves until a date in the future.

### *Conclusion*

For the foregoing reasons, Columbia Gulf's motion for summary judgment should be granted, and plaintiff's case dismissed with prejudice at plaintiff's cost.

Respectfully submitted,

*Thomas R. Blum*
_____
Thomas R. Blum, T.A. (#3170)
James A. Burton (#3708)
Christina H. Belew (#1244)
SIMON, PERAGINE, SMITH & REDFEARN, L.L.P.
1100 Poydras Street
30th Floor - Energy Centre
New Orleans, Louisiana 70163-3000
Telephone: (504) 569-2030

Attorneys for Columbia Gulf Transmission Company

---

[2] In quoting from the *Vizinat* release, plaintiff conveniently neglected to include this crucial language, which immediately precedes the quote from the release (found at 552 So.2d at 1238) cited on page 7 of TPSB's opposition.

8

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been served on all counsel of record by telecopier and by placing same in the United States mail, first-class postage prepaid and properly addressed, this 8th day of January, 2001.

_____