

U. S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FILED    JAN 1 0 2001

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| TERREBONNE PARISH SCHOOL BOARD | § | CIVIL ACTION NO. 00-0319 |
| VERSUS | § | SECTION:   B |
| COLUMBIA GULF TRANSMISSION COMPANY, KOCH GATEWAY PIPELINE COMPANY | § § | MAGISTRATE: 5 |
| FILED:_____ | § | _____ |
| | | DEPUTY CLERK |

## SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE TESTIMONY OF COLUMBIA GULF TRANSMISSION COMPANY'S EXPERT, JOSEPH SUHAYDA

**MAY IT PLEASE THE COURT:**

Terrebonne Parish School Board ("TPSB"), plaintiff in this case, files this supplemental memorandum in support of TPSB's Motion in Limine to Exclude Testimony of Columbia Gulf Transmission Company's ("Columbia Gulf") Expert, Joseph Suhayda.

The facts and applicable law were stated in TPSB's original memorandum and are adopted by reference herein.

**TESTIMONY OF JOSEPH SUHAYDA**

Suhayda is Columbia Gulf's purported expert in hydrology. As stated previously,

Fee_____
_____Process_____
X_ Dktd_____
_____CtRmDep_____
Doc.No.__109__

the expert report of Suhayda is based upon general studies not specific to TPSB's property, and Suhayda performed no independent analysis to verify that these general studies apply without deviation to TPSB's property. Furthermore, Suhayda confirmed at his deposition that he adopted several of Dr. Coleman's opinions, Columbia Gulf's purported wetlands specialist, as his own work product. As such, to the extent Suhayda relies on the findings of Coleman, Suhayda's testimony is duplicative and unnecessary.

Under *Daubert v. Merrell-Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the Supreme Court has made it clear that the "trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." The first inquiry is whether a witness is qualified as an expert. See F.R.E. 702, 104(a). Suhayda is a scientist who works in the area of "physical oceanography". Suhayda's field is concerned with the "fluid mechanics of natural saline, water bodies, including coastal and deep oceans, lakes, coastal waters, similar water bodies."[1] Hence, Suhayda does not even work in a field that deals with freshwater bodies, much less freshwater marshes like the one at issue in this case. Yet, in this case, he is rendering opinions about a completely different type of ecosystem than oceans, seas, and other saline water bodies.

Next, the opinions of Suhayda in his report section entitled "Marsh Loss Data" should be excluded as unsupported by scientific methodology. Suhayda discusses land loss in his report. At his deposition, Suhayda acknowledged this was the work product of

---

[1] See pg. 22, lines 4-18, deposition of Joseph Suhayda attached to this memorandum as Exhibit "A".

Dr. Coleman.[2]    Suhayda's opinions on land loss and land gain are duplicative and unnecessary.  They also indicate no scientific methodology was followed, but rather, Suhayda assumed the information obtained from Coleman was accurate. As such, the testimony of Suhayda as to the matters contained in the section of his report entitled "Marsh Loss Data" must be excluded.

Suhayda addresses "Inundation" in section 3.1 of his report.  Suhayda relies on general studies by the Louisiana Coastal Wetlands Conservation and Restoration Task Force to conclude that the marshes "in Section 16 have experienced subsidence at a rate of about 1 to 2 feet per century."[3]  At his deposition, Suhayda acknowledged that his conclusions were based upon information not specific to the property at issue.  In fact, he relied on several general areas, one ten miles away, one 50 miles away, and one covering all of Terrebonne Parish and Lafourche Parish.[4]  Indeed, the fact that Suhayda's analysis is superficial and based on information which he has not shown is applicable to the property at issue is supported by his acknowledgment that he estimates that the property at issue had generally subsided 1-2 feet in the past century based on his reference sources.[5]  He relies on general conclusions about property completely unrelated to the property at issue to reach a conclusion specific to TPSB's property.

Section 3.8 of Suhayda's report is entitled "Columbia Gulf Canal" and deals with

---

[2] See pg. 64, lines 5-25, pgs. 65-66, lines 1-13, deposition of Joseph Suhayda attached to this memorandum as Exhibit "A".

[3] See ¶ 2, section 3.1 entitled "Inundation" of Suhayda report attached as Exhibit "D" to TPSB's motion in limine.

[4] See pg. 70, lines 23-25, pgs. 71-72, lines 1-22, deposition of Joseph Suhayda attached to this memorandum as Exhibit "A".

[5] See pg. 70, lines 23-25, pgs. 71-72, lines 1-22, deposition of Joseph Suhayda attached to this memorandum as Exhibit "A".

Suhayda's hydrologic conclusions on TPSB's property.    Suhayda testified in his deposition that he measured the surface velocity in the marsh by observing "the movement of material that was floating in the water and timed a distance that it took to move a certain amount . . . a certain distance as an estimate of what the velocity was."[6] Suhayda acknowledged that his measurements indicate <u>only</u> surface velocity, and that his measurements could have been affected by wind or current created by Columbia Gulf's air boat.[7]    More amazingly, the scientific instrument Suhayda used to time the distance of the material and calculate velocity was his wrist watch, not a stop watch.[8]    An analogy will show just how crude Suhayda's methodology was in measuring surface velocity.  Suhayda's analysis is analogous to a person calculating the speed of a car from one point to another using a wrist watch to time the distance it takes the car to travel between two points, while McCorquodale's (TPSB's hydrologist) methodology is analogous to using a radar gun to calculate speed.  McCorquodale's measurements were taken using a state of the art electronic/mechanical flow probe which was calibrated for accuracy prior to his study.

Moreover, Suhayda's calculations are irrelevant because they deal with surface velocity.  TPSB's claims are based on subsurface erosion of the root mat.  Hence, McCorquodale's measurements were at a subsurface level.  The conclusions of Suhayda are not based on sufficient facts and data, are not the product of reliable principles and

---

[6] See pg. 56, lines 8-25, pg. 57, lines 1-25, deposition of Joseph Suhayda attached to this memorandum as Exhibit "A".

[7] See pg. 56, lines 8-25, pg. 57, lines 1-25, deposition of Joseph Suhayda attached to this memorandum as Exhibit "A".

[8] See pgs. 84-85, lines 1-6, deposition of Joseph Suhayda attached to this memorandum as Exhibit "A".

methods, and do not indicate that Suhayda applied the principles and methods reliably to the facts of this case. Fed. R. Civ. P., Rule 702. Consequently, TPSB submits that Suhayda's testimony must be excluded at trial.

Respectfully submitted,

ST. MARTIN & WILLIAMS (APLC)

_____

**MICHAEL X. ST. MARTIN  #12365**
**JOSEPH G. JEVIC, III            #23145**
Post Office Box 2017
Houma, Louisiana 70361-2017
(504) 876-3891      Telephone
(504) 851-2219      Facsimile

**A. J. GRAY, III                      #6253**
**WADE T. VISCONTE            #24734**
**THE GRAY LAW FIRM (APLC)**
Post Office Box 1467
Lake Charles, LA 70602-1467
(337) 494-0694      Telephone
(337) 494-0697      Facsimile

**Attorneys for**
**Terrebonne Parish School Board**

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that a copy of the foregoing supplemental memorandum has been mailed to all counsel of record via facsimile and United States mail, postage prepaid on this _____8th_____ day of _____January_____, 2001.

_____
JOSEPH G. JEVIC, III