

PLEASE FILE
IN RECORD

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| TERREBONNE PARISH SCHOOL BOARD | * | CASE NUMBER: 00-0319 |
| | * | |
| VERSUS | * | SECTION: "B" |
| | * | |
| COLUMBIA GULF TRANSMISSION | * | MAGISTRATE: 5 |
| COMPANY AND KOCH GATEWAY | * | |
| PIPELINE COMPANY | * | |

\* \* \* \* \* \* \* \* \* \* \* \*   \* \* \* \* \* \* \* \* \* \* \* \*

## COLUMBIA GULF TRANSMISSION COMPANY'S MEMORANDUM OF LAW

MAY IT PLEASE THE COURT:

Columbia Gulf Transmission Company ("Columbia Gulf"), through undersigned counsel, submits the following legal authorities relative to the contested issues of law that it has raised. For the sake of brevity and economy, to the extent these issues have been briefed in other pleadings, those pleadings will be referenced and the authorities contained therein will not be restated here.

    I.    **Whether the Release Signed by Plaintiff in Favor of Columbia Gulf in July, 1966 Bars All or Some of the Claims it Has Brought in this Suit.**

___Fee___
___Process___
_X_ Dktd_____
___CtRmDep____
Doc.No._115_

    II.      **Whether the Servitude Agreement Executed in Favor of Columbia Gulf by TPSB Imposing on Columbia Gulf the Duty to Maintain the Flotation Ditch and Adjoining Spoil Banks.**

    III.     **Whether Columbia Gulf Has Breached the Terms of its Right-of-way Agreement And, If So, Whether Such Breach Was the Cause of Any Damage to Plaintiff.**

The applicable legal authorities and a discussion thereof as to issues I, II and III are fully set forth in Columbia Gulf's memorandum in support of motion for summary judgment and reply to TPSB's opposition to its motion for summary judgment.

    IV.     **Whether Plaintiff's Claims Are Limited to Those Sounding in Breach of Contract Rather than in Tort.**

The authorities relative to this issue are fully discussed in Columbia Gulf's memorandum in support of Motion to Dismiss all Claims Sounding in Tort and Asserted Under the Louisiana Mineral Code or, in the Alternative, Motion for Partial Summary Judgment. Fundamentally, it is the position of Columbia Gulf that all of the alleged damages claimed by plaintiff arose out of the construction, operation and maintenance of Columbia Gulf's pipeline - - which are precisely the matters governed and regulated by the contracts between the parties. In addition to the authority cited in Columbia Gulf's memorandum in support, see also, *Ryan v. Southern Natural Gas Co.,*, 879 F.2d 162, 164 (5th Cir. 1989 ("when a servitude is established by the contract, the extent and mode of using the servitude is regulated by the contract . . . . A written agreement is the law between the parties and must be interpreted and enforced according to its terms.")

V. **Whether Plaintiff Has a Viable Claim under Louisiana Mineral Code Article 122.**

The authorities relative to this issue are fully discussed in Columbia Gulf's memorandum in support of Motion to Dismiss all Claims Sounding in Tort and Asserted Under the Louisiana Mineral Code or, in the Alternative, Motion for Partial Summary Judgment. In addition, plaintiff has conceded in its response to the foregoing motion that the Louisiana Mineral Code is *not* applicable in this case.

VI. **Whether All of Some of Plaintiff's Claims Are Prescribed.**

The proper prescriptive period to be applied in any action depends on the nature of the cause of action. Columbia Gulf has filed a motion seeking dismissal of all of TPSB's tort claims, but will nonetheless brief both contract and tort prescription below.

**Contract Prescription.**

Contract prescription is governed by statute and jurisprudence in Louisiana. LCC Article 3499 provides for a ten (10) year prescriptive period for breach of contract claims. Liberative prescription on a contract claim begins to run from the date of the obligor's breach of his obligation. *Lewis v. Sohio Petroleum* Company, 528 So.2d 1084 (La. App. 3rd Cir. 1988), *writ granted, judgment rev'd*, 532 So.2d 754 (La. 1988), citing *Loewer v. Texas Gas Transmission Company*, 615 F. Supp 1 (W.D.La. 1984).

The *Lewis* case is significant because it involves a breach of contract claim against a pipeline company for failure to maintain the canal banks and exceeding the servitude agreement.

-3-

The *Lewis* court ruled that deposition testimony indicated that plaintiffs were aware of defendant's breach as early as 1953, causing their claim to prescribe in 1963. The *Lewis* court focused on the knowledge of the grandfather that the canal exceeded the servitude, and imputed it to the children, indicating an agency relationship. *Lewis, supra* at 1089. The *Lewis* decision is also significant because it holds that the continuing tort doctrine of *South Central Bell v. Texaco*, 418 So.2d 581, 583 (La. 1982) is not applicable to a breach of contract case, such that prescription in a breach of contract case can not be interrupted by an alleged continuing tort. *Lewis, supra* at 1090.

TPSB has argued that prescription does not apply because the defendants are continuing operations on TPSB property, and whether its claims are based on contract or tort, the continuing operation interrupts prescription. TPSB is apparently asserting some "continuing breach theory" whereby prescription does not commence to run if contractual breaches and/or damages are continuous. *Lewis, supra,* is the only reported case to address this theory.

*Lewis* involved a claim by right of way grantors that Sohio breached its servitude by allowing canals to exceed the contractually allowed 65 feet in width, thereby causing erosion and severe surface and ecological damage. The evidence showed that the canals exceeded the contractually allowed width as early as 1953. Plaintiffs argued that prescription had not yet begun to run because damages were continuing. The court flatly rejected this argument, stating that there was no authority for applying the "continuing tort" doctrine in the context of a contract. The Supreme Court, per curiam, reversed the grant of summary judgment on the prescription issue and

-4-

remanded with the instruction that the exception of prescription be referred to the merits. There is no further record of this case, and Columbia Gulf has not found any further trace of this theory.

To the extent TPSB is arguing that prescription has not <u>started</u> to run in this case because Columbia Gulf continues to transport gas through its pipeline running across plaintiff's land, its argument is similar to the *Lewis* "continuing action" theory, although TPSB carries it one illogical step further by relying on the continuing exercise of contractual rights rather than continuing breaches to supposedly interrupt prescription. There is absolutely no authority in Louisiana law for the proposition that prescription on a breach of contract claim is interrupted indefinitely during the pendency of the contract.

In a similar case, another section of this Court in *St. Martin v. Quintana*, No. Civ. A 98-2095, 1999 WL 232635 (E.D. La. April 19, 1999) held that plaintiff's breach of contract claims had prescribed because it found the breach in question to be failure to restore the property "as near as is practical to its original condition." The court found that such a failure would have been obvious to anyone observing the canal over 20 years ago. *St. Martin v. Quintana, supra*, at 3. Similarly, the studies TPSB now seeks to exclude made obvious years ago the possibility of, if not the fact of, the erosion it now complains of.

**Tort Prescription**

Tort prescription is also governed by statute and jurisprudence in Louisiana. To the extent TPSB's claims are styled as torts,[1] La. C.C. article 3493 provides a one (1) year prescriptive period. Prescription of a delictual (tort) action begins to run from the date that the owner of the immovable acquired or should have acquired knowledge of the damage. Without interruption or suspension of the running of prescription, suit must be filed within one (1) year of the tort.

In cases where the damage is not immediately apparent, prescription begins to run from the time a reasonable person under similar circumstances would have become aware of both the tort and the damages. *Boyd v. B.B.C. Brown Boveri, Inc.*, 656 So.2d 683 (La. App. 2nd Cir. 1995) citing *Richardson v. Avondale Shipyards, Inc.*, 600 So.2d 801 (La. App. 5th Cir. 1992).

*Cornay v. FMC Corporation*, 735 So.2d 944 (La. App. 3rd Cir. 1999) provides a good factual example of facts sufficient to place a plaintiff on notice. In *Cornay*, the plaintiff sued a chemical company, alleging that a herbicide destroyed his oak trees. The trial court sustained the company's exception of prescription, finding that plaintiff, through years of consulting with several aborists and the company, had a reasonable basis to bring a cause of action more than one (1) year prior to suit being filed. *Cornay* at 952. The Third Circuit affirmed this finding, through

---

[1] Columbia Gulf has filed a Motion for Judgment on the Pleadings/Motion for Summary Judgment dismissing all tort claims.

citation to *Jordan*, "when prescription begins to run depends on the reasonableness of plaintiff's action or inaction."

Constructive notice has been held to trigger the prescriptive period. *K & M Enterprises, Inc. v. Richland Equipment Company, Inc.*, 700 So.2d 921 (La. App. 1st Cir. 1997). Constructive notice is found at the point at which a plaintiff has sufficient information to excite attention and prompt further inquiry, and includes knowledge or notice of everything to which that inquiry might lead. *Adams v. First National Bank of Commerce*, 644 So.2d 219 (La. App 4th Cir. 1994).

Specifically, with respect to real property, La. C.C. art. 3493 provides:

> When damage is caused to immovable property, the one year prescription commences to run from the day the owner of the immovable acquired, or <u>should have acquired</u>, knowledge of the damage. (Emphasis supplied)

Similar to its "continuing breach theory," to avoid the one year prescription and argue that prescription is not an issue, TPSB has attempted to rely on a continuing tort theory. The theory of continuing tort has its roots in property damage cases and requires that the operating cause of the injury be a continuous one which results in continuous damages. *See, Crump v. Sabine Rider Authority,* 737 So.2d, 720, 725 (La. 1999). The lower court in *Crump* stated that in order to prevail on a continuing tort theory, the plaintiff must allege both "continuous action" and "continuous damage." *Crump v. Sabine River Authority*, 715 So.2d 762, 766 (La. App. 3 Cir. 1998).

The *Crump* case involved suit by a landowner against a state agency. The state agency had the duty to manage a reservoir. However, a third party built an unauthorized canal on the agency's reservoir property which altered the normal flow of water of a nearby bayou, effectively denying the landowner access to a lake. The landowner sued the agency seeking injunctive relief and money damages for loss of use of the property, diminished value and emotional distress. One of the state's defenses was that the landowner's claim had prescribed. The appellate court affirmed the trial court's denial of the plea of prescription by the state agency, holding that the record clearly supported the application of the continuing tort theory. The appellate court reasoned that the state agency's continuous contacts with the landowner and repeated representations that it would resolve the water flow problems, as well as its unsuccessful attempts to do so satisfied the "continuous action" element. The "continuous damage" element was met, according to the appellate court, because the unauthorized canal adversely affected the landowner's access rights and was never rectified. The Louisiana Supreme Court disagreed, and reversed the appellate court's decision, holding the landowner's claim was prescribed.

The Supreme Court found that the construction of the unauthorized canal did not fulfill the "continuous action" requirement of a continuing tort that could suspend the running of prescription. Specifically, the Supreme Court stated:

> . . . the defendant's duty to remove the canal would stem from its obligation under La. Civ.Code article 2315 to repair damage caused by its tortuous conduct. However, the breach of the duty to right a wrong and make the plaintiff whole simply cannot be a continuing

> wrong which suspends the running of prescription, as that is the purpose of any lawsuit and the obligation of every tortfeasor. Thus, plaintiff's argument that the defendant's persistent refusal to remove the canal constitutes continuous tortuous conduct is insupportable. We therefore conclude that the plaintiff has failed to demonstrate any continuous tortuous conduct on the part of the defendant.

*Crump*, 737 So.2d at 729 (citations omitted).

The canal was completed in 1971, suit was not filed until 1992 and since the Court found that the continuing tort theory could not be applied under the facts presented, the landowner's claim was prescribed.

Columbia Gulf suggests that the foregoing authorities demonstrate that TPSB is legally incorrect in its assertion that the pipeline canal constitutes "continuous action" causing "continuous damage" to the marsh through erosion thereby satisfying both elements of a continuing tort. Specifically, in *Crump,* the Supreme Court explained that "the breach of the duty to right a wrong and make the plaintiff whole simply cannot be a continuing wrong which suspends the running of prescription, as that is the purpose of any lawsuit and the obligation of every tortfeasor." *Crump*, 737 So.2d at 729. The alleged failure by Columbia Gulf to maintain the flotation ditch for its pipeline is a single wrong similar to the state agency's failure to remove the offending canal in *Crump*. Thus, the continuing tort theory is not a viable interruption to tort prescription and TPSB's tort claims, if any, would be subject to the one year period of La. C.C. art. 3493.

VII. **The Apportionment of Liability, If Any, Between the Two Defendants and Plaintiff and Third Parties.**

Divisible v. Indivisible Obligations

In this case, TPSB has not alleged that the obligation to maintain the canals by CGT and Koch is an indivisible obligation, but it has alleged that defendants' are solidarily liable.

La. C.C. Art. 1789 addresses the distinction between divisible and indivisible joint obligations. It provides:

> When a joint obligation is divisible, each joint obligor is bound to perform, and each joint obligee is entitled to receive, only his portion.
>
> When a joint obligation is indivisible, joint obligors or obligees are subject to the rules governing solidary obligors or solidary obligees.

In *Reliance Trust v. Texas Gas Transmission*, 499 So.2d 202, 207 (La. App. 2 Cir. 1986) the court, in ruling on a venue exception, found that two gas companies (Texas Gas Transmission and West Monroe Gas) were not joint or solidary obligors as alleged by plaintiff. *Reliance Trust* involved a suit over the dispute for failure to pay for gas delivered. The court held that the plaintiff had separate contracts with both companies containing separate obligations, therefore, the two were not joint and solidary obligors. Based on the reasoning of the court in *Reliance Trust, supra,* the obligations of CGT and Koch would be divisible and thus, not a basis for solidary liability since both defendants' rights and obligations *vis a vis* TPSB are governed by separate rights of way and separate damage releases. TPSB itself has recognized the divisible nature of defendants'

alleged liability. TPSB's experts have attributed certain alleged marsh damage to Koch and other damage to Columbia Gulf. In addition, TPSB's proposed restoration plans address Columbia Gulf and Koch separately. Therefore, liability, if any, must be apportioned between the two defendants, with each responsible only for the damage occasioned by its own alleged breaches.

### Plaintiff's Failure to Mitigate

Louisiana Civil Code article 2002 provides:

> An obligee must make reasonable efforts to mitigate the damage caused by the obligor's failure to perform. When an obligee fails to make these efforts, the obligor may demand that the damages be accordingly reduced.

In any suit for damages, the plaintiff bears the burden of proving his monetary damages. *Borden, Inc. v. Howard Trucking Company, Inc.*, 454 So.2d 1081 (La. 1983). When property is damaged by the fault of another, the primary objective is to restore the property as nearly as possible to the state it was in immediately preceding the accident. *Coleman v. Victor*, 626 So.2d 344 (La. 1976).

The theory of the duty to mitigate is that avoidable consequences of a breach are not recoverable; a party that has breached a contract owes only the damages which the other party has sustained by the breach. *Electrodata Mfg. Corp. v. Domed Stadium Hotel, Inc.*, 362 So.2d 1122, 1126 (La. App. 5th Cir. 1978); *writ denied*, 365 So.2d 825.

An injured party is required to take reasonable steps to exercise ordinary prudence to minimize the damage. *Stanley v. Guy*, 442 So.2d 579 (La. App. 1st Cir. 1983); *Barsavage v.*

*State DOTD*, 686 So.2d 957 (La. App. 1st Cir. 1996). The standard by which these steps are judged is that of a reasonable man under like circumstances. *Al's Trucking v. State Farm Fire & Cas. Co.*, 98-1542 (La. App. 3rd Cir. 5/12/99); 735 So.2d 833; *Philippe v. Browning Arms Co.*, 395 So.2d 310 (La. 1980). The amount of damages awarded to the victim of a contract breach will be reduced if it is shown that all or part of the damages sustained should have been avoided. LSA-C.C. art. 2323; *J. Cohen Jeweler, Inc. v. Succession of Jumonville*, 506 So.2d 535 (La. App. 1st Cir. 1987).

Thus, if evidence discloses that the flotation ditch in which the Columbia Gulf pipeline is laid has widened over the last 35 years, and that TPSB took no steps to mitigate this alleged problem, and further, that TPSB has known since the early to mid 1980's of the erosion problems on Section 16 land, but did nothing, its recovery must be reduced to the extent its inaction led to avoidable damages.

VIII. **Whether Cost of Restoration Is a Measure of Damages Available to Plaintiff**.

IX. **The Proper Measure of Damages, If Any, Available to Plaintiff.**

In its petition, TPSB alleges that defendants CGT and Koch are liable for "damages in an amount sufficient to restore TPSB property to its original condition, including restoration of the property damaged by the pipeline canals and spoil banks dredged by the Defendants." Petition, ¶27, p.6.

The leading Louisiana case on the issue of damages for injury to real property is the 1993 state Supreme Court case of *Roman Catholic Church of the Archdiocese of New Orleans v. Louisiana Gas Service Co.*, 618 So. 2d 874 (La. 1993). The Supreme Court of Louisiana stated the general rule with respect to the recovery of restoration costs as follows:

> [A]s a general rule of thumb, when a person sustains property damage due to the fault of another, he is entitled to recover damages including the cost of restoration that has been or may be reasonably incurred, or, at his election, the difference between the value of the property before and after the harm. *If, however, the cost of restoring the property in its original condition is disproportionate to the value of the property or economically wasteful, unless there is a reason personal to the owner for restoring the original condition or there is a reason to believe that the plaintiff will, in fact, make the repairs, damages are measured only by the difference between the value of the property before and after the harm.*

618 So. 2d at 879-80 (emphasis added).

See also, *St. Martin v. Mobil Exploration & Producing U.S., Inc.*, 1998 WL 474211 (E.D. La. 1998); *St. Martin v. Mobil Exploration & Producing U.S., Inc.*, 1999 WL 5671 (E.D. La. 1999).

Louisiana courts considering the value of unpermitted wetlands usable primarily for recreational and similar purposes have used a more or less standard valuation of $500 to $550 per acre for unpermitted wetlands with a primarily recreational use. Indeed, this very range was cited by the Supreme Court of Louisiana in a detailed opinion as recently as 1994. *West Jefferson Levee District v. Coast Quality Const. Corp.*, 640 So. 2d 1258 (La. 1994). *See* also generally, *Rivet v.*

*State Department of Transportation & Development*, 680 So. 2d 1154 (La. 1996); *West Jefferson Levee District v. Mayronne*, 595 So. 2d 672 (La. App. 5th Cir. 1992); *Louisiana Department of Transportation & Development v. Fakouri*. 541 So. 2d 291 (La. App. 3d Cir. 1989); *State Department of Transportation & Development v. Boagni*, 509 So. 2d 471 (La. App. 3d Cir. 1987); and *Faustina Pipe Line Co. v. Hebert*, 469 So. 2d 483 (La. App. 3d Cir. 1985).

On this case, the expert testimony of Dr. Ragas will support a value for the property in question of even less: no more than $250 per acre. In this context and considering the foregoing authorities, costly if not extravagant proposed restoration plans costing hundreds of thousands or millions of dollars are not only "disproportionate to the value of the property or economically wasteful," as stated in *Roman Catholic Church, supra*, but also are grossly and ridiculously inappropriate as damage herein.

### X.     Whether Dr. Penland Is Qualified to Testify on Economic Valuation Issues.

The authorities pertaining to Dr. Penland's qualifications to testify, as well as authorities on the *Daubert* problems with the economic valuation of wetlands theories offered by TPSB have been briefed in Columbia Gulf's Motion in Limine to Exclude Valuation Testimony of Plaintiff's Expert Penland.

### XI.    Whether Dr. Chabreck's Opinions and Methodology Satisfy the Requirements of FRE 702.

The authorities on this issue have been thoroughly treated in Columbia Gulf's Motion in Limine to Exclude Testimony of Plaintiff's Expert Chabreck.

Respectfully submitted,

_____
Thomas R. Blum, T.A. (#3170)
James A. Burton (#3708)
Herman C. Hoffmann, Jr. (#6899)
Christina H. Belew (#1244)
SIMON, PERAGINE, SMITH & REDFEARN, L.L.P.
1100 Poydras Street
30th Floor - Energy Centre
New Orleans, Louisiana 70163-3000
Telephone: (504) 569-2030

Attorneys for Columbia Gulf Transmission Company

## CERTIFICATE OF SERVICE

I hereby certify that copies of the foregoing has been served upon all counsel of record by telecopier or by depositing same in the U.S. mail, postage prepaid and properly addressed this __8__ day of January, 2001.

_____