FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2002 NOV 26  PM 4: 57

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **TERREBONNE PARISH SCHOOL BOARD** | * | CASE #00-0319 |
| | * | |
| | * | SECTION "B" |
| **VERSUS** | * | |
| | * | MAGISTRATE 5 |
| **COLUMBIA GULF TRANSMISSION COMPANY and KOCH GATEWAY PIPELINE COMPANY** | * | |
| | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## DEFENDANT KOCH GATEWAY PIPELINE COMPANY'S
## MOTION FOR SUMMARY JUDGMENT, IN WHOLE OR PART

**NOW INTO COURT**, through undersigned counsel, comes defendant, Koch

Gateway Pipeline Company ("Koch"), who, pursuant to Rule 56 of the Federal Rules of

Civil Procedure, moves for summary judgment in its favor and against plaintiff Terrebonne

Parish School Board ("TPSB"), dismissing TPSB's Complaint, in its entirety, with prejudice,

and at its sole cost. Alternatively, Koch moves for partial summary judgment in its favor.

The reasons in support of this Motion for Summary Judgment are more fully set out in the

attached memorandum in support hereof.

Fee _____
Process _____
X Dktd _____
_____ CtRmDep _____
Doc. No. 735

Respectfully submitted,

**ROBERT J. YOUNG, JR (#13763)**
**ROBERT J. YOUNG, III (#19230)**
**YOUNG, RICHAUD & MYERS**
1100 Poydras Street, Suite 1515
New Orleans, LA   70163
(504) 585-7750

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been forwarded to all counsel of record via hand-delivery, facsimile and/or by placing a copy of same in the U.S. Mail, postage pre-paid, on this 26th day of November, 2002.

**ROBERT J. YOUNG, III**

2

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **TERREBONNE PARISH SCHOOL BOARD** | * | CASE #00-0319 |
| | * | |
| | * | SECTION "B" |
| **VERSUS** | * | |
| | * | MAGISTRATE 5 |
| **COLUMBIA GULF TRANSMISSION COMPANY and KOCH GATEWAY PIPELINE COMPANY** | * | |
| | * | |
| | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## DEFENDANT KOCH GATEWAY PIPELINE COMPANY'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, IN WHOLE OR PART

**MAY IT PLEASE THE COURT**:

### I. FACTUAL AND PROCEDURAL BACKGROUND:

Terrebonne Parish School Board ("TPSB") has sued defendants Koch Gateway Pipeline Company ("Koch") and Columbia Gas Transmission Company ("Columbia"). TPSB's Petition alleges that, since the 1800's, it has owned Section 16, Township 18 South, Range 13 East, located entirely in Terrebonne Parish, Louisiana, (the "Property").

On or about December 18, 1957, TPSB granted to United Gas Pipe Line Company

("United"),[1] a right-of-way and servitude agreement ("agreement").[2] In return for payment of $366.60, TPSB, *inter alia*, to Koch:

> "...a right-of-way and easement 100 feet in width to construct, maintain, operate, repair, replace, change the size of and remove pipe lines and appurtenances thereto, including the right at its election to lay such pipe line or lines in open ditches or canals not to exceed 40 feet in width, which may be filled in or left open at the option of grantee, together with the right to construct, maintain, operate, repair, replace and remove, in connection with the conduct of its business, telegraph, telephone and power lines and appurtenances thereto, including the necessary poles, guy wires and anchors, over and through the following described lands....
>
> * * *
>
> TO HAVE AND TO HOLD unto grantee, its successors and assigns, so long as the rights and easements herein granted, or any of them, shall be used by, or useful to, grantee for the purposes herein granted, with ingress to and egress from the premises, for the purposes of construction, inspecting, repairing, maintaining and replacing the property of grantee herein described, and the removal of same at will, in whole or in part.
>
> * * *
>
> It is hereby understood that the parties securing this grant in behalf of grantee is without authority to make any covenant or agreement not expressed herein."

---

[1]     United is the predecessor in interest to Koch, and hereinafter they will be collectively referred to as "Koch."

[2]     A copy of the right-of-way agreement is attached hereto as Exhibit 1.

2

TPSB has sued Koch, alleging that Koch is responsible for damage to TPSB's marsh property in Section 16, as well as widening or erosion of Koch's canal. TPSB's Complaint, filed on October 19, 1999, essentially makes two claims for damages: (1) Koch has permitted its canal to widen and enlarge, including deterioration of the spoil banks, and thus has caused direct loss of TPSB's marsh property (Petition, Paragraphs 10, 11 and 13); and (2) Koch's alleged failure to maintain the flotation ditch and spoil banks has damaged the adjacent marsh property (Petition, Paragraphs 7, 8, 12, 13, 14, 15 and 16).

For purposes of the summary judgment motion, Koch admits that it has never taken any action to "maintain" the canal, including the adjoining spoil banks. However, it is also undisputed that, prior to filing suit in October, 1999, TPSB never asked Koch to undertake any such action.

## II. **SUMMARY OF ARGUMENT**:

This court previously granted summary judgment in favor of both defendants, finding that TPSB's claims, whether in tort or contract, had prescribed. On appeal, the U. S. Fifth Circuit reversed. *Terrebonne Parish School Board v. Columbia Gulf Transmission Company and Koch Gateway Pipeline Company*, 290 F.3d 303 (5th Cir. 2002), hereinafter *Columbia*. The *Columbia* court's reversal was based primarily upon on the fact that this court's prior ruling imputed tract-specific knowledge to TPSB, whereas the evidence showed only general knowledge of erosion in certain Section 16 properties.

3

Koch now submits that summary judgment is once again appropriate, as previous testimony was not introduced into the record establishing that TPSB, via member Francis Voisin and others, was aware of specific erosion on this piece of property, i.e. T18-R13, Section 16, and which erosion was attributable to the presence of the canals. TPSB was aware of this knowledge as early as the "mid-'80s," but did not file suit until October, 1999.

In addition, Koch submits that issues relative to prescription and continuing tort are ripe for summary judgment, notwithstanding the Fifth Circuit's opinion. Specifically, Koch and/or its contractors dredged a canal which in fact exceeded 100 feet in width at or shortly after the time of its dredging, as opposed to the 40 foot width provided in the right-of-way agreement.[3] Accordingly, under the doctrine of acquisitive prescription, Koch has acquired a servitude which includes a canal up to 100 feet in width, notwithstanding the servitude provision which provides that the canal cannot exceed 40 feet in width.

### III. <u>LAW AND ARGUMENT</u>:

#### A. <u>Summary Judgment Standard.</u>

Summary judgment is appropriate where the pleadings, depositions, discovery responses, admissions on file and any affidavits demonstrate that there is no genuine

---

[3] Previously, all parties had apparently been under the assumption that Koch's canal was dredged at a width of 40 feet, and then on its own eroded to 100 feet or greater, as estimated by plaintiff's expert Charles Camp. However, as the attached affidavit of Koch's expert surveyor, John Mattingly, establishes, by 1960 the canal was 100 feet wide, less than two years after the canal was dredged.

issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See, e.g., *Ayo v. Johns-Manville Sales Corp., 771 F.2d 902, 904 (5th Cir. 1985).* "Summary judgment must be entered...against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case on which that party will bear the burden of proof at trial." *Lujan v. National Wildlife Federation, 497 U.S. 871, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990).*

Further, once the moving party has made a properly supported Motion for summary judgment, the opposing party may not rest on allegations contained in its complaint, but must respond with specific facts or law showing the existence of a genuine factual issue to be tried. *Beal Corp. Liquidating Trust v. Valleylab, Inc., 927 F. Supp. 1350 (D. Co. 1996).* To preclude the entry of summary judgment, a non-movant must make sufficient showing on every essential element of his case on which he has the burden of proof at trial. *Scarpino v. Grosshiem, 852 F.Supp. 798 (S.D. Iowa 1994).*

As Koch will demonstrate hereafter, the applicable law mandates summary judgment in favor of Koch on all issues or, alternatively, as to certain issues regarding alleged damages which TPSB may recover.

## B. Actual Knowledge.

As previously noted, the Fifth Circuit's reversal of the trial court was based primarily upon the fact that, even though the prior record was replete with evidence that TPSB knew

5

that marsh erosion in Section 16 generally was a serious problem, "... no evidence in the summary-judgment record suggests that the Board actually knew that Section 16 (18-13) in particular had suffered or was suffering erosion." *Columbia*, 290 F.3d 303, 321.

However, the unrebutted testimony of TPSB member Francis Voisin in fact now establishes that TPSB, and Mr. Voisin, as a Board member, had knowledge specifically pertaining to the tract at issue, Section 16 (18-13).[4] Mr. Voisin's uncontradicted testimony clearly establishes knowledge by both him and other TPSB members, in their official capacities, of erosion on this specific Section 16, i.e. 18-13:

> Q:    We're dealing with this Section 16 lands in
> Township 18, Range 13. Do you know where that's located?

> A:    No, sir not right offhand.

> Q.    If I tell you it's west of Bayou Penchant?

> A.    Yeah. Okay, I know the area quite well.

### MR. YOUNG:

By Little Horn Bayou.

### EXAMINATION BY MR. HOFFMANN:

> Q.    So you're familiar with that particular Section 16?

---

[4] Mr. Voisin's testimony was not presented into the record at the previous summary judgment, nor presented to the Fifth Circuit because his deposition was taken on December 22, 2000, and the transcript of same was not available for submission to the court.

6

A.    I fly over and fish there often.

Q.    And for how many years have you been doing that?

A.    All of my life.

Q.    And how old are you?

A.    I'm 52 years old.

Q.    Had you made any special trips to that section just to see what the section looked like?  Not to go fishing, not to do anything else but just to go take a look at it as a School Board member?

A.    Absolutely.  We made, I've made several personally, I've made one or two with some administrators. We flew over quite a few times.  I used to fly over it.  But I do remember this one particular trip where we took, I think Mr. Ken Willoughby, myself and someone from the State Land Department, if I'm correct, some lady from the State Land Department. we flew and actually looked, I would imagine, at that section there in Bayou Penchant area and stuff like that. We looked at that situation there and noted the erosion problems that they had there.

Q.    When would that have been approximately?

A.    Oh, in my tenure of School Board, within those years, I was pretty active at 16th Section land from the get-go. And I would have to look at my notes.  There are minutes that ----- there are minutes and also meetings that reflect when we did that.  I just couldn't recall it right now.

Q.    In any event, it would be somewhere between '76 and '90?

7

A.    Oh, yes; oh, yes.

Q.    Do you think it would be earlier than later or can you give me any -----

A.    Probably about mid point probably.

Q.    So, sometime in the '80s, probably?

A.    Probably.

Q.    You say you went with Mr. Willoughby?

A.    Kent Willoughby.

Q.    Who is Mr. Willoughby?

A.    Mr. Willoughby was the gentleman who took Mr. Charlie Collins' place for the School Board in managing 16th Section lands.

Q.    And there was a lady from the State, you indicated?

A.    I believe, yes, she was from the State Department of Lands.  I don't remember her title or anything.[5]

* * *

Q.    Thank you very much.  Now, in addition to discussing this with Mr. Lewis and Mr. Lyons -----

A.    Mr. Lewis is deceased, I believe.  I believe Mr. Lewis has died since.

---

[5] See Exhibit 2, Voisin deposition, pp. 14-17.

8

Q.      But at the time he was on the Board and obviously when you went out there and you took a look at it and you showed him the erosion in the area, in addition to discussing it with those two gentlemen, did you discuss your findings with other members of the Board?

A.      Yes.

Q.      And did you discuss it with other members of the Section 16 Lands Committee?

A.      Correct.  Yes.

Q.      Was this a topic that was discussed more than once?  And I'm talking about erosion of Section 16 lands administered by the Board.  Was this a topic that was -----

A.      Often.

Q.      Often.  Is it fair to say that from what you know that the Board was fully aware that there was an erosion problem with the Section 16 lands -----

A.      Correct.

Q.      ----- at the time you -----

A.      All of them.  Most of them.  All of them.

Q.      Including the one that we're dealing with here?

A.      (Witness nods head affirmatively.)

Q.      You have to say yes?

A.      Correct, yes, yes.

9

Q.    And that would have been known to the
Board at the time you were on the Board from '76
to '90; is that correct?

A.    Yes. It would have been reported to the
Board.

Q.    And the Board had the capability to go
out, any Board member who wanted to see what the
damage was could have gone out to take a look at it;
correct?

A.    Easily. We would have arranged it.[6]

Equally important, Mr. Voisin said that both he and other TPSB members were

aware that the erosion was due to pipeline and oil canals:

Q.    Do you know, if in response to the reports
you made to the Board members and the conversations
that you had with Board members regarding the erosion
issue, whether the Board sought to take any action
against pipeline companies or others that they felt may
have been causing erosion on these Section 16 lands?

A.    Yes, we did. We did at least pass some
motions with the intent of having our 16th Section
lands returned to the original condition that they were
either before or after pipelines made their move into it or
rigs or what-have-you, whoever used it.

It wasn't limited to just oil companies though it
was specifically designed for oil companies because of
their use in and out. It also was designed to trappers,
for seismic workers who were doing seismic work
through the property and stuff like that. And we have

---

[6]  Exhibit 2, Voisin deposition, pp. 29-31.

> passed a policy ----- this is what the Board does, it
> passes policy and rules that the school system works
> under or operates under, and I know we did, let's say,
> put a lid on some of this stuff, especially erosion and
> damage to the property as people used it, whoever
> that be.[7]

In other words, the testimony of Mr. Voisin has clearly established both tract-specific knowledge relative to Section Sixteen (18-13), as well as knowledge that the erosion on said tract was attributable to the oil and pipeline companies and oil and gas and pipeline canals.  This clearly satisfies the Fifth Circuit's concern about actual versus constructive knowledge, when the Fifth Circuit held:

> We are satisfied that actual notice must result from overt
> knowledge of damage to the specific property at issue,
> particularly when, as here, the plaintiff landowner has long held
> title to many remote and scattered section sixteen, only one of
> which is Section 16 (18-13), but many of which are located in
> the extensive, marshy southern part of this coastal parish.

*Columbia* at 321.

Koch therefore submits that TPSB's actual notice is well established.   Moreover, even if the court now applies a constructive notice test, arguably requiring a greater burden of proof, Koch submits that Mr. Voisin's testimony has clearly established sufficient grounds for constructive notice to apply.  As the Fifth Circuit noted in *Columbia* "... knowledge is imputed only when the plaintiff has 'information sufficient to excite attention

---

[7] Exhibit 2, Voisin deposition, pp. 32-33.

and do prompt further inquiry.'" *Columbia* at 321, citing *Picard v. Vermillion Parish School Board*, 2000-1222, 4 (La. App. 4th Cir. 4/4/2001), 783 So.2d 590, 594. The *Columbia* court also found that the reasonableness of inaction depends almost entirely on the particular circumstances, requiring a case-by-case analysis. *Columbia* at 322.

Given the uncontradicted testimony of Mr. Voisin, including the knowledge which he attributes not just to himself as an official School Board member, but to other TPSB members, clearly TPSB's inaction was unreasonable under these circumstances. TPSB knew of specific erosion on Section Sixteen (18-13), and that it was being caused, at least in part, by pipeline and oil canals. Mr. Voisin's testimony also establishes that the School Board had this knowledge by the "mid-80s." Because TPSB did not file suit until October, 1999, TPSB's claims, whether in contract (ten years) or tort (one year) are both clearly prescribed.

## C. Implied Contractual Duties.

The Fifth Circuit also held that the Koch and Columbia servitude agreements contain language which "... either explicitly or implicitly permit Koch and Columbia simply to standby and let this [canal widening and erosion] happened while continuing to use the canals in connection with their use of the pipeline servitudes." *Columbia* at 314. Based upon the fact that the Koch servitude agreement was apparently silent on the issue of any duty to maintain or control erosion, the Fifth Circuit reversed the trial court's decision.

However, a review of another servitude agreement executed contemporaneously

12

with the agreement at issue, clearly establishes that the parties in that agreement imposed specific obligations on Koch which are not present in TPSB's servitude agreement. The only logical conclusion is that Koch did not intend to bind itself to prevent the erosion which TPSB alleges. The servitude agreement in question is between Koch and Continental Land & Fur Company, Inc. ("Continental"), executed on January 28, 1958, less than a year before Koch and TPSB entered into their servitude agreement. This agreement also involves, among others, T18-R13 Sections 13, 17 and 18. Most importantly, that agreement contains the following language:

> (c)    Grantee [Koch] shall install and maintain in mid canal and ditch, at Grantee's expense, and as directed by Grantor, [Continental] dams sufficiently adequate to effectively obstruct the flow of water in said canal and ditch and to obstruct the use of said canal by ordinary marine traffic at each and every point designated on said map marked Exhibit "A"; Grantee shall also construct and maintain, at Grantee's expense, similar dams in certain streams, canals, ditches and other water courses intersected by said canal dredged hereunder, at all points designated on said map marked Exhibit "A"; said dams to be of metal or timber sheeting with earth and shell plugs, and shall be constructed in the manner shown on the diagram marked Exhibit "C", attached hereto and made part hereof. Grantee further agrees, at Grantee's expense, to cut such additional openings in said spoil banks and to construct and maintain such additional dams in said canal or in intersecting streams, canals, ditches and water courses, and to remove any of those constructed hereunder, as may from time to' time be directed by' Grantor, in order to prevent undue erosion, drainage, flooding, infiltration of salt water or intrusion of trespassers of or upon Grantor's land.[8]

---

[8]  See Exhibit 3, servitude agreement between Koch and Continental Land & Fur Company, Inc., Paragraph II (c).

Using the Fifth Circuit's rationale in *Columbia*, i.e. "... the mere grant of a <u>right</u> to maintain a canal does not necessarily impose the <u>duty</u> to maintain it or to take other steps to prevent the canals from widening and the surrounding marsh mat from eroding...." *Columbia* at 314, the Koch and Continental servitude agreement clearly sets forth a duty to maintain the canal within certain guidelines, and the logical conclusion is that if such a duty were required in the Koch and TPSB servitude agreement, then such language would and could have been included. Again, it is particularly noteworthy that the Koch and Continental servitude agreement was executed 11 months before TPSB's agreement, and involves property immediately adjacent to Section 16, i.e. Section 17. If Koch had intended to be bound by some duty to maintain its canal on Section 16, then language similar or identical to that contained in the Koch and Continental agreement could and would have been included.[9]

This is further confirmed by the actions, or more particularly the inactions, of the parties over the past 40 years. It is undisputed that, prior to instituting this lawsuit in October, 1999, TPSB never made demand upon Koch (or United) to maintain the spoil banks, prevent the canal from widening, or undertake any other active obligation with

---

[9] It should also be noted that the Koch and Continental servitude agreement was not admitted into evidence or considered by either the district court or the Fifth Circuit Court of Appeals in connection with the prior hearing. Koch submits that this new evidence, like that of Mr. Voisin's testimony, clearly creates factual and legal bases for granting summary judgment in favor of Koch.

14

respect to the canal which was originally dug in 1958. In addition, as Koch has admitted

for purposes of this Summary Judgment Motion, it did nothing with respect to "maintaining"

the canal located on TPSB's property since the time it was installed. As such, the manner

in which the parties have performed a contract is one of the best ways to determine the

intent therein. See, e.g., *Total Minatome*, 766 So.2d 685 (La. App. 2nd Cir. 2000), stating

that clear and explicit words of a contract are to be followed and no further interpretation

may be made in search of the party's intent. See also *Sanders v. Ashland Oil, Inc.*, 696

So. 2d 1031 (La. App. 1st Cir. 1997), writ denied 703 So.2d 29 (La. 1997). supra, at 689;

*Doyal v. Pickett*, 628 So.2d 184 (La. App. 2nd Cir. 1993). Louisiana Civil Code Article 2050;

Louisiana Civil Code Article 2053. This is particularly true when the manner of adherence

to the term of the contract has been consistent over many years. *Bell Pass Terminal, Inc.*

*v. Jolin, Inc.*, 634 So.2d 466 (La. App. 1st Cir. 1994), writ denied 638 So.2d 1094 (La.

1994).

In sum, Koch submits that it is entitled to summary judgment on the issue of any

existence of any duty to maintain the canal or otherwise prevent damage to the adjacent

marshland. The servitude agreement between Koch and Continental, executed prior to

TPSB's agreement, clearly establishes that Koch did, from time to time, actively impose

a duty upon itself to maintain spoil banks and/or dams or other water-controlling structures.

The lack of any such specific language in the TPSB servitude agreement mandates a

finding that no such duty exists, as it was clearly not Koch's intent to undertake such a duty

15

as respects the School Board's servitude agreement.

## D. Acquisitive Prescription.

As the attached Affidavit of John Mattingly makes clear, the Koch canal was an average width of 105.7' in October, 1960. Forty years later, in October, 2000, the Koch canal was an average width of 101.2'.[10] Between October, 1060, and October, 2000, while the width of the Koch canal varied from time to time, primarily because of either the water level at the time of the photograph or the amount of vegetation along the spoil banks, the canal never exceeded the 1960 width of 105.7'. When the 16 measurements taken between 1960 and 2000 are averaged, the average annual width of the canal is 102.78'.

Koch has been unable to obtain any aerial photographs which depict the width of the canal as originally installed in 1959, after execution of the December, 1958 servitude agreement. The closest photograph in time is that of 1960, which, again, indicates an average width of 105.7'. Obviously, therefore, there are two possible explanations for why the canal was an average of 105.7' width in 1960. First, and clearly the most likely explanation, is that the canal was originally dredged to a width of 105'. The second, and highly unlikely, explanation is that the canal was originally dredged to a width of less than 105.7', which might include a width of 40' as described in the right-of-way agreement, and

---

[10]     See Exhibit of 4, affidavit of John Mattingly. This current width of the canal is in keeping with testimony of plaintiff's expert surveyor, Charles Camp, who opined in his deposition that, as of mid-2000 when he surveyed the property, the canal was approximately 106' wide.

then expanded or widened to a width of 105.7' by October, 1960.

Obviously, the first explanation is the most reasonable, as less than a year had passed since the dredging of the canal. For purposes of this supplemental memorandum, Koch will assume same to be the case. However, even if the second explanation is applicable, the arguments herein regarding acquisitive prescription of 10 years or 30 years are still applicable, as it is clear that the canal had a width of 105.7' in October, 1960.

Louisiana law provides that apparent servitudes may be obtained by acquisitive prescription:

> **"Art. 742.    Acquisitive prescription**
>
> The laws governing acquisitive prescription of immovable property apply to apparent servitudes. An apparent servitude may be acquired by peaceable and uninterrupted possession of the right for ten years in good faith and by just title; it may also be acquired by uninterrupted possession for thirty years without title or good faith."

Louisiana law further defines an apparent servitude as: "Apparent servitudes are those that are perceivable by exterior signs, works or constructions; such as a roadway, a window in a common wall, or an aqueduct." *La. C.C. Art. 707.* Clearly, a canal dredged on TPSB's property as part of a servitude is an apparent servitude. It is open and obvious, and something that is perceivable by an exterior sign, work or construction.

Koch submits that, to the extent its canal has exceeded any 40' width provided for in the right-of-way agreement, then Koch has acquired those rights by acquisitive

17

prescription. Since the canal's width has been an average of over 102' throughout the 40 year period in question, Koch submits that any claims which TPSB has asserted in its October, 1999, lawsuit herein, whether for alleged erosion of the canal or widening thereof, have prescribed. The October 11, 1990 photograph shows an average width of 102.6', which is almost identical to the average width of the canal throughout the 40 year period in question, and is commensurate with the original width of 105.7' as first measured in 1960. Thus, for 30 years the Koch canal was consistently an average width of 102'.

Koch submits that the 10 year prescriptive period for acquisitive prescription based upon good faith should apply. First, under Louisiana Civil Code, Art. 3481, good faith is always presumed:

> "**Art. 3481.    Presumption of good faith**
>
> Good faith is presumed. Neither error of fact nor error of law defeats this presumption. This presumption is rebutted on proof that the possessor knows, or should know, that he is not owner of the thing he possess."

In this instance, there has been no evidence to suggest that Koch was in bad faith when it originally constructed this pipeline. Quite the contrary, and as noted above, all parties had assumed that the canal was originally dredged to a width of 40'. Alternatively, even if Koch was in bad faith in dredging the canal beyond the 40' width provided for in the right-of-way agreement, Koch has still obtained use of the entire canal width based upon prescription of 30 years:

18

**"Art. 3486.    Immovables; prescription of thirty years**

Ownership and other real rights in immovables may be acquired by the prescription of thirty years without the need of just title or possession in good faith."

In sum, it is clear that Koch has had a canal servitude with an average width of 102.7' since at least 1960, and, in all likelihood, since the canal was originally dredged in 1958. Regardless of whether this Court applies 10 years good faith or 30 years bad faith, Koch is still entitled to summary judgment for any alleged widening or erosion of the canal, insofar as any prescriptive period would have run by 1990, and the lawsuit herein was not filed until, October, 1999.

In fact, as to the issue of the alleged erosion of the canal, Koch finds it particularly interesting that the canal has not in fact eroded beyond the first recorded width of 106.7' in October, 1960, as is part of the plaintiff's claim for damages. In this regard, plaintiff likewise has no standing to seek "restoration" of the canal to the width of 40' provided in the right-of-way agreement, as any such claims for restoration, as well as damages, have prescribed.

The Fifth Circuit has recently addressed the question of prescription against TPSB, and has clearly ruled that TPSB does not occupy the same position as the State of Louisiana, i.e. immune from prescription. See, *Terrebonne Parish School Board v. Mobil Oil Corporation*, (2002 WL 31422778 (5th Cir. (La.))). Because prescription runs against TPSB, because open and obvious servitudes can be acquired by acquisitive prescription,

19

and because the servitude in question and flotation canal was at least 105.7 feet wide in October, 1960 and has consistently remained over 100 feet wide since then, Koch has acquired, at a minimum, the right to maintain a 100 foot wide canal on TPSB's property. Koch therefore submits that, at the least, it is entitled to summary judgment, dismissing any and all of TPSB's claims seeking restoration of the canal to a width of 40 feet.

## CONCLUSION

In conclusion, Koch requests that this Honorable Court grant summary in its favor, dismissing TPSB's claims in their entirety. Koch has now established that TPSB had actual, tract-specific knowledge of alleged damage to the piece of property in question Section 16 (18-13) by the mid-1980's, and that this damage was allegedly attributable to oil and pipeline canals. Notwithstanding such knowledge, TPSB did not file suit until October, 1999, well past either the one year (delictual) or 10 ten (contractual) prescriptive period. Koch is further entitled to summary judgment on the issue of any duty to maintain the canal, as Koch has established it was clearly not Koch's intent to be bound by such an agreement. The servitude agreement between Koch and Continental, executed 11 months before the TPSB and Koch servitude agreement, contained specific language requiring or imposing a duty upon Koch to perform certain maintenance of the canal and prevention of erosion. No such language, and therefore no such duty exists in the servitude agreement between Koch and TPSB.

Finally, and only in the alternative, Koch submits that it is entitled to summary

judgment on the issue of the canal width.  The undisputed factual evidence establishes that the canal had a width of 105.7 feet in October, 1960, which would be within 12 months after it was dredged.  The canal maintained an average width of over 102 feet from 1960 through 1999, when suit was filed, a period of over 39 years.  Under Louisiana law, whether ten years is good faith or 30 years bad faith, Koch has acquired the right to keep the canal at a width of at least 102 feet.  Koch therefore requests that the court grant partial summary judgment, dismissing TPSB's claim for damages and/or specific performance related to the width of the canal and erosion associated therewith.

Respectfully submitted,

ROBERT J. YOUNG, JR. (#13763)
ROBERT J. YOUNG, III (#19230) (T.A.)
YOUNG, RICHAUD & MYERS
1100 Poydras Street, Suite 1515
New Orleans, LA  70163
(504) 585-7750

Attorneys for defendant,
*KOCH GATEWAY PIPELINE COMPANY*

21

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been forwarded to all counsel of record via hand-delivery, **_facsimile_** and/or by placing a copy of same in the U.S. Mail, postage pre-paid, on this 26th day of November, 2002.

_____

ROBERT J. YOUNG, III

22

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

**TERREBONNE PARISH SCHOOL**          *    CASE #00-0319
**BOARD**                             *
                                      *    SECTION "B"
VERSUS                                *
                                      *    MAGISTRATE 5
**COLUMBIA GULF TRANSMISSION**        *
**COMPANY and KOCH GATEWAY**          *
**PIPELINE COMPANY**                  *
                                      *

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## STATEMENT OF UNCONTESTED MATERIAL FACTS

**NOW INTO COURT**, through undersigned counsel, comes defendant, Koch

Gateway Pipeline Company ("Koch"), who in support of its Motion for Summary Judgment

filed contemporaneously herewith, would submit the following Statement of Undisputed

Facts which are material to the disposition of Koch's Motion for Summary Judgment:

1.

The Terrebonne Parish School Board ("TPSB") alleges in its Petition that it has

owned all Section 16, Township 18 South, Range 13 East in Terrebonne Parish, Louisiana

2.

On December 18, 1957, TPSB granted a right-of-way and servitude agreement in

favor of Koch, a copy of which agreement is attached as Exhibit 1 in support of Koch's Motion for Summary Judgment.

3.

In connection with the right-of-way and servitude agreement, Koch paid TPSB $366.60 for same.

4.

Subsequent to execution of the right-of-way agreement, Koch and/or its contractual dredged a floatation canal in TPSB Section 16 property. This canal was dredged in 1958.

5.

As of October, 1960, the floatation canal referenced above and dredged by Koch and/or its contractor in 1958 has an average width of 105.7 feet per the affidavit of expert surveyor, John C. Mattingly.

6.

The average width of the Koch canal since 1950 has been as follows on the dates indicated, all pursuant to aerial photographs interpreted by Koch's expert surveyor, John C. Mattingly:

2

| Date | Average Width |
|------|---------------|
| October 22, 1960 | 105.7' |
| January, 1965 | 102.4' |
| October, 1974 | 98.7' |
| 1978 | 90.1' |
| October31, 1980 | 93.3' |
| March 9, 1981 | 88.7' |
| 1983 | 93.4' |
| October 28, 1983 | 101.1' |
| October 15, 1987 | 86.4' |
| October 11, 1990 | 102.6' |
| November 23, 1994 | 103.6' |
| January 7, 1995 | 99.7' |
| December 29, 1995 | 101.9' |
| May 1, 1996 | 97.8' |
| February 23, 1998 | 104.1' |
| October 10, 2000 | 101.2' |

7.

During dredging of this flotation canal, Koch and/or its contractor deposited material removed from the ditch onto either side of the canal, creating "spoil banks."

8.

Since Koch and/or its contractor originally dredged the canal in approximately 1958, neither Koch nor any contractors working therefore have done any additional dredging of the canal located on TPSB's property, nor deposited any additional materials onto the "spoil banks," or otherwise performed any activities in connection with the spoil banks located on TPSB's property.

3

9.

Prior to filing this lawsuit in October, 1999, TPSB never made demand, whether formal or informal, judicial or otherwise, upon Koch to backfill Koch's canal located on TPSB's property, or maintain or perform any work in connection with the spoil banks adjacent thereto.

Respectfully submitted,

ROBERT J. YOUNG, JR. (#13763)
ROBERT J. YOUNG, III (#19230)
YOUNG, RICHAUD & MYERS
1100 Poydras Street, Suite 1515
New Orleans, LA   70163
(504) 585-7750

Attorneys for defendant,
*KOCH GATEWAY PIPELINE COMPANY*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been forwarded to all counsel of record via hand-delivery, facsimile and/or by placing a copy of same in the U.S. Mail, postage pre-paid, on this 26th day of November, 2002.

ROBERT J. YOUNG, III

4

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

**TERREBONNE PARISH SCHOOL**          *    CASE #00-0319
**BOARD**                                            *
                                                     *    SECTION "B"
**VERSUS**                                           *
                                                     *    MAGISTRATE 5
**COLUMBIA GULF TRANSMISSION**        *
**COMPANY and KOCH GATEWAY**          *
**PIPELINE COMPANY**                             *
                                                     *

*  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  **

## NOTICE OF HEARING

**PLEASE TAKE NOTICE** that Koch Gateway Pipeline Company's Motion for Summary Judgment, In Whole or Part is set for hearing in the United States District Court, Eastern District of Louisiana, New Orleans, before the Honorable Ivan L. R. Lemelle at 500 Camp Street, New Orleans, Louisiana, on **December 11, 2002**, at **9:00 A.M.**, or as soon thereafter as counsel may be heard.

Respectfully submitted,

_____

**ROBERT J. YOUNG, JR. (#13763)**
**ROBERT J. YOUNG, III (#19230)**
**YOUNG, RICHAUD & MYERS**
1100 Poydras Street, Suite 1515
New Orleans, LA   70163
(504) 585-7750

Attorneys for defendant,
***KOCH GATEWAY PIPELINE COMPANY***

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been forwarded to all counsel of record via hand-delivery, *facsimile* and/or by placing a copy of same in the U.S. Mail, postage pre-paid, on this 26th day of November, 2002.

_____

**ROBERT J. YOUNG, III**

2

# SEE RECORD FOR
# EXHIBITS
# OR
# ATTACHMENTS
# NOT SCANNED