FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2002 DEC -3 PM 1: 44

LORETTA G. WHYTE
CLERK

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| TERREBONNE PARISH SCHOOL BOARD | ) | CASE NO.: 00-0319 |
| VERSUS | ) | SECTION: "B" |
| COLUMBIA GULF TRANSMISSION COMPANY, and KOCH GATEWAY PIPELINE COMPANY | ) ) ) ) | MAGISTRATE: 5 |

### TERREBONNE PARISH SCHOOL BOARD'S MEMORANDUM IN OPPOSITION TO KOCH'S MOTION FOR SUMMARY JUDGMENT

**MAY IT PLEASE THE COURT:**

Koch Gateway Pipeline Company ("Koch") has once again filed a motion for summary judgment premised on the issues of interpretation of their right-of-way with the Terrebonne Parish School Board ("TPSB") and/or prescription (liberative and acquisitive). However, for the reasons set forth below, Koch's motion is nothing more than a disingenuous attempt to mislead this court. As this court is familiar with the facts of this case, which are also reported in *TPSB v. Columbia Gulf Transmission Co*, 290 F.3d 303 (5th Cir. 2002), TPSB will forego another recitation of those facts and defer to the *Columbia Gulf* decision.

__ Fee ____
__ Process ____
X Dktd ____
__ CtRm Dep ____
__ Doc. No. 139

1. __Implied Contractual Duties:__

Among the reasons offered in support of summary judgment is Koch's erroneous summation of the holding of the United States Fifth Circuit Court of Appeals. In it's brief, Koch states:

> The Fifth Circuit also held that the Koch and Columbia servitude agreements contain language which "...either explicitly or implicitly permit Koch and Columbia simply to standby and let this [canal widening and erosion] happened (sic) while continuing to use the canals in connection with their use of the pipeline servitudes." *Columbia* at 314.

See Koch Memorandum in Support at p. 12. However, this is a complete misstatement of what the Fifth Circuit wrote. After concluding that the canals in question were "'appurtenances ' to the pipelines and essentials (sic) to their use", the court stated in the passage misquoted by Koch that:

> As a matter of contract interpretation alone, the mere grant of a *right* to maintain a canal does not necessarily impose the *duty* to maintain it or to take other steps to prevent the canals from widening and the surrounding marsh from eroding. But neither do the agreements clearly contemplate that the canals will widen; nor do they either explicitly or implicitly permit Koch and Columbia simply to stand by and let this happen while continuing to use the canals in connection with their use of the pipeline servitudes.

*Columbia* at 314. Consequently the Fifth Circuit concluded that "Louisiana's suppletive rules of property law apply." *Columbia* at 315. Furthermore, the Fifth Circuit concluded that "the dominant estate owner – here, each defendant – must not 'aggravate' the condition of the serviant estate", the duty not to aggravate the serviant estate being continuous. *Columbia* at 316. "Whether and to what extent the defendants' use of the canals caused the deterioration of the Board's property and aggravated the servient estate are questions to be determined in the light of this case's particular circumstances." *Columbia* at 317. Hence, contrary to Koch's assertions, the

Fifth Circuit did not conclude that the Koch right-of-way permitted them to simply sit back and watch TPSB's property erode away; rather, the Fifth Circuit concluded that because of the ambiguity of the right-of-way, Louisiana's suppletive laws applied, which law imposes upon Koch a continuing duty not to aggravate/damage TPSB's property.

Koch additionally submits a copy of a right-of-way executed between itself and a non-party to this litigation in support of it's contention that it owed no duty to TPSB with regard to the maintenance and repair of the canal in question. However, regardless of the contents of this agreement, it has no bearing on the present case as the Fifth Circuit has already ruled that the right-of-way in question, not being explicit on the issue of marsh erosion damage and maintenance of the canal, is governed by Louisiana's suppletive laws regarding servitudes, which are to be applied "in the light of this case's particular circumstances." *Columbia* at 315-17. Hence, what Koch did or did not do with regard to a right-of-way entered into with a different landowner, has no bearing on the duties owed by Koch with regard to TBSB.

## 2.    Acquisitive Prescription:

In yet another misguided attempt to bolster their floundering arguments, Koch attempts to argue that they have acquired a greater interest in scope of the right-of-way, *vis-à-vis* the allowable width of the canal, through acquisitive prescription. However, Koch's argument contains one major flaw, it ignores the law.

Although an apparent servitude may be acquired through acquisitive prescription, see La. Civ. Code art. 742, "[l]ands and mineral interests of the state [or] of a school board...shall not be lost by prescription except as authorized in Paragraph C." La. Const. Art. 9, §4(B) (section C involves section sixteen lands owned by TPSB and located in T20S, R16E, which land is not at

3

issue in this suit). By law, Section 16 lands are owned by the State and/or School Boards for the benefit of the school children of each parish. Because the property at issue herein is located in Section 16, adverse possessors can make no claim of ownership based on possession or acquisitive prescription because Section 16 land is state/school board land that cannot be acquired by acquisitive prescription. La. Const. Art. 9, §4(B); *Liner v. Terrebonne Parish School Board,* 519 So.2d 777, 778 (La. App. 1st Cir. 12/22/87); *writ denied,* 521 So.2d 1173 (La. 3/25/88) *cert denied,* 488 U.S. 827, 109 S.Ct. 79, 102 L.Ed.2d 55 (10/03/88); *Ward v. South Coast Corp.,* 198 La. 433, 448; 3 So.2d 689, 694 (La. 6/30/41). As such, no person or entity, Koch included, may acquire any greater rights in school board lands than are conferred by their title. Consequently, Koch's acquisitive prescription defense must be denied.

**3.     Liberative Prescription:**

With regard to the issue of liberative prescription, Koch relies upon an isolated section of the Fifth Circuit opinion and rather summarily concludes that the Fifth Circuit reversed this court solely because "no evidence in the summary-judgment record suggests that the Board actually knew that Section 16 (18-13) in particular had suffered or was suffering erosion." *Columbia* at 321 as cited by Koch. Koch then provides this court with excerpts from the deposition of a former TPSB board member, Francis Voisin. However, the passage cited was only one part of the Fifth Circuit's discussion regarding prescription and ignores the lack of relevance that knowledge plays with breaches of continuing duties.

**3.a.     Continuing Torts:**

The Fifth Circuit addressed the continuing tort exception to Koch's prescription argument. In this regard, the Fifth Circuit stated,

4

> A continuing tort presents another exception to Louisiana's one-year prescriptive period for delicts, because "when the tortuous conduct and resulting damages continue, prescription does not begin until the conduct causing the damage is abated."....For a continuing tort to exist, however, there must generally be continuing wrongful conduct, coupled with continuing damage. Both continuing damage and continuing conduct are at issue here.

*Columbia* at 323. "The Louisiana Supreme Court has summarized the continuing tort exception by explaining that a continuing tort 'is occasioned by continual unlawful acts and for there to be a continuing tort there must be a continuing duty owed to the plaintiff and a continuing breach of that duty by the defendant.' This formulation does not exclude the possibility that 'unlawful acts' may include omissions that breach a duty." *Columbia* at 325.

The Fifth Circuit previously concluded that "the duty not to aggravate the servient estate is a continuing duty." *Columbia* at 316. Consequently, the court further held,

> To the extent that aggravation of the servient estate might be found to have occurred as a result of such omissions or failures to act, a reasonable factfinder could determine that Koch and Columbia, by using the canals but failing to protect them against resulting breaches and widening, violated a duty and thus 'acted' unlawfully. Indeed, summary-judgment evidence suggests that the defendants might be continuing to do so. If so, such conduct could be wrongful for the purposes of a continuing-tort analysis. These are additional genuine issues of material fact that preclude summary judgment grounded in tort prescription.

*Columbia* at 325.

"Here, erosion of the Board's marsh allegedly continues even unto this day. The damage is not yet 'completed,' but rather continues, albeit slowly and imperceptibly." *Columbia* at 324. In his reports prepared for this court and during his deposition by defendants on these issues, TPSB's expert, Dr. Robert Chabreck, offered the following explanation as to the damages caused by Koch's improperly maintained canal over time, which confirm the Fifth Circuit's conclusion:

> CHABRECK: Okay. This is – you get water movements surging with the tides, moving back and forth, and the soil particles are very lightweight. And with the

incoming tide, some of it, the soil particles, are loosened from the bottom of those floats, and then as the tide changes, starts moving out, the movement of the water carries these particles in suspension in the water and carries them out into the canal where they are gradually swept away by the movement of the water. Now, they may, when the tides change, some of them may actually come back in through the marsh, through the same, just a reverse procedure. But a gradual movement is out to the estuaries and then –

****

Q: Which soil particles are you talking about?

CHABRECK: That's the organic soils, there's the detrital material, plant parts, roots, stems, leaves and other parts of plants that have died, and the remains go to make up the soil. It is a peat or a mucky soil. And it's probably, oh, 75 to 90 percent organic material.

****

Q: Okay. So we're not talking about the water movement injuring, directly, the live plants, is that correct?

CHABRECK: Well, eventually, the live plants are affected, when the soil gets to the point that it can no longer support the plant growth. Then the plants have to have – this organic material forms the substrate or the soil upon which these plants grow. And when that material is lost, through this erosion process, then there's no material there upon which the plants will grow, and then they die. And what often happens is the float becomes thin, it's no longer suitable for one plant community and another plant community that's better adapted to the new condition, such as when it's in that thick mat, you'll have plants such as what we call maidencane and bulltongue, and some of these type plants, may be even cattails will occupy the floats. But then as it gets thinner, the floats get thinner, then it will become occupied by more plants that are adapted to that….And, of course, these are the plants that nutria prefer as food….

****

Q: The materials that are washed away, under your hypothesis, or your opinion in this case, where are they taken from that ultimately lead to the erosion of the marsh; which of these levels do you have –

CHABRECK: The first that it starts in this soupy, mucky layer that starts eroding first, that is the most fluent material. And then, it just gradually works upward from there.

Q: Is that composed of any fixed organic material?

> CHABRECK: Not until the softer material is removed, you know, the semifluid, mucky material is exported first, and then it gets into the layer above that, and, finally, it gets up into the bottom of the root zone.

See Exhibit 1, deposition of Dr. Robert Chabreck, vol. 1 at p.194, ln.7 through p.200, ln.25.

> Q: Okay. The next thing I'd like to ask you about is to get you to describe, in a little more detail, the mechanics of the erosion of the mat that you believe takes place as a result of the exchange of water between the canals and the marsh, through a cut in the banks.
>
> CHABRECK: Okay. First off, the soil materials, or the "substrate," as you may choose to call it, is a very light material; it's an organic material, almost like coffee grinds. But it is plant debris, leaves, stems, roots of plants that previously lived in the area, then it died and fallen into the surface to form new soil and new substrate. But it is very lightweight material, very small particles.
> And these particles are picked up by moving water. Usually, the float will be from, a healthy float, will be from, say, from fifteen, eighteen inches on up to 24 inches, varying thicknesses, And then below that floating, this is a floating mat, and then below that, will be a soupier material, and maybe even water, some places, even clear water.
> But the float usually erodes from the bottom, with the water moving in and out through this opening that we've described. And the water may, in some areas, it's tidal; in some places, the boat waves may cause this erosion. But I think in this 18-13 area, it's mostly with tidal action from the Gulf of Mexico, then through the Atchafalaya River, then through Little Horn Bayou, and then through the canal systems. The tides will – you get a high tide and a low tide every day, sometimes once a day, sometimes twice a day, you have a high and low tide, and this causes the water to rush into the marsh, beneath these floats, and then back out through the opening in levee. And this constant movement of water on high tides and low tides will gradually export the soil particles which form the substrate upon which the plants grow. And, gradually, this floating root mat of organic material becomes thinner, as this material is gradually edged forward by the moving water.

See Exhibit 1, deposition of Dr. Robert Chabreck, vol. 2 at p.41, ln.16 through p.43, ln.3.

Pursuant to Louisiana jurisprudence, prescriptive statutes are to be strictly construed against prescription and in favor of the obligation sought to be extinguished; of two possible constructions, that which favors maintaining, as opposed to barring, an action should be adopted. *Bustamento v. Tucker*, 607 So.2d 532, 537, (La. 1992), *Lima v. Schmidt*, 595 So.2d 624, 629 (La.

7

1992) (collecting cases). When a breach of a continuing duty is involved, prescription does not commence to run until the breach is abated, ***and plaintiffs knowledge of the breach is irrelevant.*** *Estate of Patout v. City of New Iberia,* 97-1097, p.9 (La. App. 3rd Cir. 3/6/98), 708 So.2d 526, 531; *affirmed,* 98-0961 (7/7/99), 738 So.2d 544 (emphasis added); *Bustamento,* 607 So.2d at 537; *Pearson v. Hartford Accident & Indemnity Co.,* 281 So.2d 724 (La. 1973); *Strata v. Patin,* 545 So.2d 1180, 1189 (La.App. 4th Cir.), cert. denied, 550 So.2d 618 (La. 1989); See also *Chaney v. State Through Dept of Health and Human Resources,* 432 So.2d 256, 259-60 (La. 1983) (applying similar rule regarding date on which it was alleged plaintiff acquired knowledge of tortious act).

When faced with a breach of a continuing duty, Louisiana courts have consistently ruled since *South Central Bell Telephone v. Texaco, Inc.,* 418 So.2d 531 (La. 1982), that prescription does not begin until the breach is abated. **In this case, Koch's breach of their continuing duty has never been abated not even to this day.** In fact, Koch readily admits in its statement of uncontested material facts that it has not conducted any activities with regard to the spoil banks adjacent to the canal at issue. See Koch's 8th Statement of Uncontested Material Fact. After constructing the canal on TPSB's property, Koch simply walked away. Koch has made no effort to abate the problem. Not only has this case not prescribed; prescription has not yet started to run.

Accordingly, even accepting the irrelevant evidence presented by Koch as to erosion problems on other section 16's, and the generalized and/or specific knowledge regarding erosion problems in the marshes of Terrebonne Parish or in this section, Koch has failed in their burden of establishing knowledge sufficient to support a plea of prescription in light of the existence of

their breach of a continuing duty. Moreover, the evidence presented herein by TPSB confirms the Fifth Circuits findings that a continuing tort has taken place - consisting of Koch's continuing breach of its duty to maintain the pipeline canal and spoil banks so as not to aggravate the servient estate and continuing damages to the marsh over an extended period of time as described by Dr. Robert Chabreck.

As the only new evidence offered by Koch in their renewed effort at summary judgment is the deposition of Francis Voisin, the Fifth Circuit's previous holding is as valid now as when this matter was first presented to the court, "a reasonable factfinder could determine that Koch and Columbia, by using the canals but failing to protect them against resulting breaches and widening, violated a duty and thus 'acted' unlawfully. Indeed, summary-judgment evidence suggests that the defendants might be continuing to do so. If so, such conduct could be wrongful for the purposes of a continuing-tort analysis. These are additional genuine issues of material fact that preclude summary judgment grounded in tort prescription." *Columbia* at 325.

### 3.b.     Continuing Contractual Duties:

TPSB has brought claims against Koch based in tort and contract. Although the rules governing contract disputes and breaches are separate and apart from those governing offenses and quasi offenses, these domains can and do overlap where delictual duties arise separate and apart from the contractual duties. *Healthcare Management Services, Inc. v. Vantage Healthplan, Inc.*, 32,523 (La. App. 2nd Cir. 12/8/99); 748 So.2d 580, 583. It has long been recognized by the Louisiana Supreme Court that the same acts or omissions may constitute a breach of both delictual duties and contractual duties thereby giving rise to actions *ex delicto* and *ex contractu*. *Short v. Griffin*, 96-0361 (La. 8/21/96); 682 So.2d 249, 253; *United Gas Pipe Line Co., v.*

*Cargill, Inc.*, 612 So.2d 783, 785-86 (La. App. 1st Cir. 1992). "[W]hen a party has been damaged by the conduct of another arising out of a contractual relationship, the former may have two remedies, a suit in contract [and] an action in tort" and he may seek to recover damages in either or both of the two actions. *Federal Ins. Co. v. Ins. Co. of N.A.*, 263 So.2d 871, 873 (La. 1972).

"When the parties made no provision for a particular situation, it must be assumed that they intended to bind themselves not only to the express provisions of the contract, but also to whatever the law...regards as implied in a contract of that kind or necessary for the contract to achieve its purpose." La. Civ. Code art. 2054; *Nat'l Safe Corp. v. Benedict & Myrick, Inc.*, 371 So.2d 792, 795 (La. 1979). "[N]ot all obligations arising out of contracts need be explicitly stated....Furthermore, everything that by [law or] equity is considered incidental to the particular contract, or necessary to carry it into effect, is also a part of all agreements." *Nat'l Safe*, 371 So.2d at 795. Accordingly, such obligations as may be implied by law into any contract will give rise to an action *ex contractu*. *Nat'l Safe*, 371 So.2d at 794.

In the present case, the Fifth Circuit has already held that the right-of-way at issue in the present case does not explicitly address Koch's duty to prevent marsh-erosion type damages. *Columbia* at 315. Having done so, the Court also found that Louisiana's suppletive law of conventional servitudes applies by application of article 697 of the Louisiana Civil Code. *Columbia* at 315. By virtue of article 697, every right-of-way, Koch's included, "are regulated by the title by which they are created, and, in the absence of such regulation, by the following rules [governing servitudes]." La. Civ. Code art. 697. Accordingly, in the absence of regulation by title, Louisiana's suppletive law of servitudes "is considered incidental to the particular contract, or necessary to carry it into effect, [and] is also a part of all agreements." *Nat'l Safe,*

371 So.2d at 795. Consequently, the right to sue for and recover damages resulting from Koch's failure to maintain their canal and spoil banks and corresponding breach of their continuing duty not to aggravate the servient estate, whether appearing expressly in the right-of-way or supplied by the Civil Code, also arises *ex contractu*. *Nat'l Safe*, 371 So.2d at 794-95.

Consequently, the Fifth Circuit held that "we conclude that the life of the duty of a servitude owner not to aggravate the condition of the servient estate by allowing a canal to widen is coextensive with the life of the servitude. When such a duty exists, it is continuous." *Columbia* at 317.

Although the right-of-way involved herein imposes an *ex contractu* continuing duty not to aggravate the servient estate by virtue of the suppletive provisions of the Civil Code, said duty is nevertheless one that by law "is considered incidental to the particular contract, or necessary to carry it into effect, is also a part of all agreements." *Nat'l Safe*, 371 So.2d at 795. As continuing duties that arise *ex contractu* may be enforced throughout the duration of the servitude/right-of-way agreement, TPSB's claims against Koch, whether arising *ex delicto* or *ex contractu*, are not prescribed. *Columbia* at 317.

4.     **Conclusion:**

In conclusion, TPSB submits that Koch has failed to properly support its motion for summary judgment. That genuine issues of material fact remain with regard to the existence of a continuing tort or breach of a continuing contractual duty and that Koch is not entitled to judgment as a matter of law on the issue of acquisitive prescription.

Wherefore, Plaintiff prays that this court deny Koch's motion for summary judgment in whole. Alternatively, Plaintiff submits that if and only if this court should be inclined to dismiss

any portion of the claims herein on the grounds of prescription, that only those claims for damages occurring more than one-year prior to filing suit, if grounded in tort, or ten-years prior to filing suit, if grounded in contract, are prescribed – all other claims remaining triable.

Respectfully submitted,

---

MICHAEL X. ST. MARTIN #12365
JOSEPH G. JEVIC III          #23145
ST. MARTIN & WILLIAMS, APLC
Post Office Box 2017
Houma, LA 70361
(985) 876-3891    Telephone
(985) 851-2219    Facsimile


**A. J. GRAY, III          #6253**
**WADE T. VISCONTE      #24734**
**THE GRAY LAW FIRM (APLC)**
Post Office Box 1467
Lake Charles, LA 70602-1467
(337) 494-0694    Telephone
(337) 494-0697    Facsimile

**Attorneys for Terrebonne Parish School Board**

### CERTIFICATE OF SERVICE

I CERTIFY that a copy of the preceding pleading has been served on all counsel of record via Federal Express, on this 2nd day of December, 2002.

---
JOSEPH JEVIC, III

12

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| TERREBONNE PARISH SCHOOL BOARD | ) | CASE NO.: 00-0319 |
| VERSUS | ) | SECTION: "B" |
| COLUMBIA GULF TRANSMISSION COMPANY, and KOCH GATEWAY PIPELINE COMPANY | ) ) ) ) | MAGISTRATE: 5 |

**TPSB'S RESPONSE TO KOCH'S STATEMENT OF UNDISPUTED MATERIAL FACTS**
**AND**
**TPSB'S STATEMENT OF GENUINE ISSUES OF MATERIAL FACT**

Pursuant to Local Civil Rule 56.2, plaintiff, TERREBONNE PARISH SCHOOL BOARD, ("TPSB"), submits the following Response to Koch's Statement of Undisputed Material Facts and their own Statement of Genuine Issues of Material Facts.

### Response to Koch's Statement of Uncontested Material Facts:

1. admitted

2. admitted

3. Item 3 is not material to the issues presented by Koch's summary judgment and are therefore denied

4. TPSB admits that subsequent to the execution of the right-of-way in 1957 that Koch and/or its contractors dredged the canal at issue

5. denied, TPSB has not previously seen the affidavit of John Mattingly and has not had the opportunity to depose the affiant with regard to the measurements presented therein to discern their rate of error. Moreover, as the right-of-way granted is only 100 feet in width and only permits a canal up to 40 feet in width, there exists a genuine issue of material fact as to the reliability of said measurements.

6. denied as per the reasons set forth for item 5

7. TPSB admits that dredge material was placed along the banks of the Koch canal during dredging

8. TPSB admits that Koch has not maintained or otherwise performed any activities with regard to the spoil banks alongside its canal

9. TPSB admits that, prior to the filing of the present lawsuit, it did not make any prior demand upon Koch to maintain or repair its canal and/or spoil banks; however, TPSB denies that it was required to make such demand as a prerequisite to this suit.

**TPSB's Statement of Genuine Issues of Material Fact:**

1. There is a genuine issue of material fact as to whether or not the Koch pipeline canal and breaches in the pipeline canal have caused continuing erosion and other continuing damages to the Terrebonne Parish School Board's property located in Section 16, Township 18 South, Range 13 East, Terrebonne Parish, Louisiana. See deposition of Robert Chabreck attached as exhibits 1 & 2 (only exhibits 1-6 to volume 1 of Dr. Chabreck's deposition are attached)

2. There is a genuine issue of material fact as to the extent of the continuing damage caused to the TPSB property by lack of maintenance of the Koch pipeline canal system, including marsh adjacent to both sides of the Koch pipeline canal system, subsequent to the dredging of the Koch pipeline canal. See deposition of Robert Chabreck attached as exhibits 1 & 2.

3. There is a genuine issue of material fact as to the width of the Koch pipeline canal at the time the pipeline canal was dredged and whether the canal has eroded and is a greater width than when originally dredged. See deposition of Robert Chabreck attached as exhibits 1 & 2.

4. There is a genuine issue of material fact as to the amount of widening of the Koch pipeline canal that has occurred. See deposition of Robert Chabreck attached as exhibits 1 & 2.

Respectfully submitted,

_____
MICHAEL X. ST. MARTIN #12365
JOSEPH G. JEVIC III #23145
ST. MARTIN & WILLIAMS, APLC
Post Office Box 2017
Houma, LA 70361
(985) 876-3891     Telephone
(985) 851-2219     Facsimile


**A. J. GRAY, III**          #6253
**WADE T. VISCONTE**    #24734
**THE GRAY LAW FIRM (APLC)**
Post Office Box 1467
Lake Charles, LA 70602-1467
(337) 494-0694     Telephone
(337) 494-0697     Facsimile

**Attorneys for Terrebonne Parish School Board**

### CERTIFICATE OF SERVICE

I CERTIFY that a copy of the preceding pleading has been served on all counsel of record by placing same ~~in the United States mail delivery, postage prepaid and properly addressed~~ Via FedEx, on this 2nd day of December, 2002.

_____
JOSEPH JEVIC, III

# SEE RECORD FOR EXHIBITS OR ATTACHMENTS NOT SCANNED