

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2002 DEC 16 AM 11: 46

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| TERREBONNE PARISH SCHOOL BOARD  * | | CASE NUMBER: 00-0319 |
| * | | |
| VERSUS  * | | SECTION: "B" |
| * | | |
| COLUMBIA GULF TRANSMISSION  * | | MAGISTRATE: 5 |
| COMPANY AND KOCH GATEWAY  * | | |
| PIPELINE COMPANY  * | | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## COLUMBIA GULF'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO QUASH PENLAND DEPOSITION

Plaintiff, Terrebonne Parish School Board ("TPSB"), has filed a motion to quash the deposition of its expert, Dr. Shea Penland, which was noticed by defendant Columbia Gulf Transmission Company ("Columbia Gulf"), for December 20, 2002. This memorandum in submitted in opposition to that motion.

### BACKGROUND

In this suit, TPSB seeks to recover from two natural gas pipeline companies, Columbia Gulf and Koch Gateway Pipeline Company ("Koch") for alleged loss of marsh resulting from the gradual widening of the flotation canals dredged in connection with the installation of defendants' pipelines several decades ago, and from defendants' alleged failure to maintain the canals and

associated spoil banks so as to prevent loss of marsh in the areas adjacent to these canals. The property in question is a one square mile section of freshwater floatant marsh in remote western Terrebonne Parish known as Section 16, Township 18 South, Range 13 East ("Section 16").

Among the important issues to be determined are the extent of marsh loss in Section 16, the causes of that loss and the proper standard for valuing this remote floatant marshland. Plaintiff's expert, Dr. Penland, has submitted expert reports bearing on these three subjects. In the first, he quantifies the area inside the two pipeline canals and their related spoil banks as well as the amount of marsh that he believes has been converted to water in the remainder of Section 16 since the pipelines were constructed.[1] Although for the most part Dr. Penland does not express an opinion as to the influence of various potential causes of marsh loss in Section 16 (such as the activity of nutria and other herbivores), he has submitted a report opining that one well recognized cause of marsh loss, hurricanes, had no influence on the loss of marsh in Section 16.[2] Finally, Dr. Penland submitted a report purporting to assign a value to the Section 16 marsh using "societal value" techniques developed in other contexts.[3]

---

[1]  "Assessment of Direct and Indirect Impacts of Pipelines in Section T18SR13E S16 in Terrebonne Parish, Louisiana (revised)," dated December 15, 2000.

[2]  "Assessment of Potential Hurricane Damage to Terrebonne Parish School Board Section 16, Township 18 South, Range 13 East Property," dated September 13, 2000.

[3]  "Assessment of Louisiana Coastal Wetland Values" dated September 13, 2000.

2

Counsel for TPSB correctly states that Dr. Penland was extensively examined regarding these three reports in his depositions taken on November 27 and December 5, 2000, although it should be noted that Dr. Penland was not examined on his revised marsh loss report during his deposition, since the revised report was not received until after December 15, 2000.

## ARGUMENT

More than two years have elapsed since defendants deposed Dr. Penland. The proposed deposition was noticed primarily to give defendants an opportunity to examine Dr. Penland on intervening events which may have influenced his opinions, and to update those opinions. For example, during the fall of this year Tropical Storm Isidore and Hurricane Lilly both struck south Louisiana and passed over Section 16. Indeed, Section 16 lay to the east of the eye of Hurricane Lilly as it moved ashore as a category three hurricane and proceeded inland. Dr. Penland gave several interviews to the press in which he described the damage that Hurricane Lilly and other hurricanes like it inflict on Louisiana's fragile marsh land. Columbia Gulf wishes to examine Dr. Penland regarding those statements and compare his recent expressions to the opinions found in his earlier report and deposition.

Additionally, Dr. Penland serves on several committees as part of the Coastal Wetland Planning, Protection Restoration Act ("CWPPRA") and its offshoot, the "Coast 2050" project, which have been formed to investigate means to preserve and restore Louisiana's marshland and barrier islands, and to fund the efforts that are determined to be most likely of success in that

3

regard. During his earlier depositions, Dr. Penland stated that he was then conducting a study for these programs which was considering the feasibility of marsh restoration in the Barataria Basin and "we'll probably start working next in the Terrebonne Basin on Phase II feasibility study." Penland deposition, November 27, 2000, p. 84. The process these environmental task groups use to evaluate the feasibility of proposed projects includes valuation assessments using the techniques suggested by Dr. Penland in this case. (Columbia Gulf's environmental economist, Dr. Leonard Shabman, also serves on the "Coast 2050" project.) There have been a number of activities since Dr. Penland was last deposed and Columbia Gulf wishes to examine Dr. Penland on those activities, as well as related publications, which could bear on the question of valuation and the feasibility of plaintiff's proposed restoration plans.

Finally, Columbia Gulf intends to examine Dr. Penland as to the amendment to his marsh loss study and to otherwise examine Dr. Penland as to his opinions in this case to determine whether there have been any modifications.

For the first time, in its memorandum in support of its motion, TPSB states that it will seek to introduce Dr. Penland's reports in lieu of his live testimony at trial. In a recent telephone conference Judge Lemelle urged the parties to consider this approach as to some of the expert witnesses in the case. The fact that the court may accept Dr. Penland's expert reports in lieu of his testimony underscores the need for Columbia Gulf to insure that Dr. Penland has been examined thoroughly as to all issues that bear on his opinions, because Columbia Gulf would not

4

have the opportunity to cross examine Dr. Penland at trial, but would have to rely on his deposition testimony.

Of course, Columbia Gulf is willing to reschedule Dr. Penland's deposition in light of counsel's representation that he is scheduled for oral surgery on that day. Columbia Gulf is confident that a mutually convenient date for Dr. Penland's deposition can be agreed to among counsel.

## CONCLUSION

For the foregoing reasons, Columbia Gulf respectfully submits that plaintiff's motion to quash and for protective order regarding the deposition of Dr. Shea Penland be denied and Columbia Gulf be permitted to proceed with the deposition at a time mutually convenient for the witness and all parties.

Respectfully submitted,

*Thomas R. Blum*
Thomas R. Blum, T.A. (#3170)
James A. Burton (#3708)
Herman C. Hoffmann, Jr. (#6899)
SIMON, PERAGINE, SMITH & REDFEARN, L.L.P.
1100 Poydras Street
30th Floor - Energy Centre
New Orleans, Louisiana 70163-3000
Telephone: (504) 569-2030

Attorneys for Columbia Gulf Transmission Company

5

## CERTIFICATE OF SERVICE

I hereby certify that copies of the foregoing has been served upon all counsel of record by telecopier and by depositing same in the U.S. mail, postage prepaid and properly addressed this 16th day of December, 2002.

*Thomas R. Blum*

K:\DATA\L\09700066\PLEADING\opp-memo-quash-penland.wpd    6